J. Irwin Shapiro, J.
In this action for specific performance of an “Incentive Compensation Plan” (ICP), the five plaintiffs, all former employees of the defendant Caltex Petroleum Corporation (Caltex), move for summary judgment or, in the alternative, for summary judgment in favor of four of them and a hearing with respect to a release allegedly given by the fifth, the plaintiff Schaberg. Defendant Caltex cross-moves for leave to examine the plaintiffs and to stay the motion for summary judgment until after the depositions of plaintiffs have been taken.
The plaintiffs were employed by Caltex for periods ranging from 24 to 29 years. Plaintiffs Stanley and Hallinan were discharged on June 30, 1965 and plaintiffs Runyon, Kelly and Schaberg were discharged on June 30, 1967. Admittedly, none of the plaintiffs was discharged for fault or cause nor is there any claim of bad faith on the part of Caltex in discharging them. The 1965 discharges were due to a general cutback in employment by Caltex and those in 1967 were caused by a cessation of Caltex’ operations in Europe. All of the plaintiffs were males under the age of 55 years at the time of discharge.
The issue to be determined is whether plaintiffs are entitled to any rights under the ICP which was voluntarily established by Caltex in 1953 and financed entirely by Caltex. Caltex contends that since the plaintiffs were all under 55 years of age at the time of their respective discharges, contributions made by it on their behalf to the plan during their periods of service were forfeited upon discharge. Plaintiffs contend that the ICP *782 constituted an enforceable contract under which, their rights could not be forfeited except for cause.
The ICP was one of several employee benefit plans established by Caltex. Upon his discharge, each of the plaintiffs received full benefits credited to him under an annuity savings plan and an employee savings plan. He also received a voluntary special payment which was not required under any established plan. There is a dispute between the parties as to how this special payment was computed, the plaintiffs contending that it was based solely upon months of service, while Caltex contends it was comprised of the sum of one week’s final salary for each year of service up to 26 weeks and a sum equal to the percentage of the respective ICP values, increasing from a base of 25% at age 40 or 15 years’ service at the rate of 5% per year of service or age, whichever was greater, to a maximum of 95% of such value at age 54 or 29 years ’ service. In any event, the amount of the special payment given to each of the plaintiffs exceeded, by several thousand dollars, the amount credited to his account under the ICP. Thus, even if one accepts the plaintiffs ’ principal contention that the ICP constituted an enforceable contract under which their rights could not be forfeited except for cause, there would still be an issue of fact as to whether this special payment satisfied Caltex’ obligation under the ICP, necessitating a denial of plaintiffs’ motion for summary judgment. However, I have concluded that from the undisputed facts in the case, defendant is entitled to summary judgment dismissing the complaint without the necessity of determining the effect, if any, of the special payments on Caltex’ alleged liability. Under CPLR 3211 (subd. [a]), the court may grant such relief even though defendant has not asked for it.
The facts pertaining to the creation of the ICP are similar to those pertaining to the creation of the plan in Fernekes v. CMP Ind. (13 N Y 2d 217). There, as here, the plan was voluntarily established for certain eligible employees. There, as here, the plan was funded solely through company contributions. There, as here, it did not come into existence as the result of any collective bargaining agreement and there, as here, although the eligible employees were told about the plan, they had nothing to do with its creation. Equally applicable to this case is the statement by the Court of Appeals (p. 220) that “the provisions of the Plan itself must be the criteria for a proper disposition of the controversy.” Silfen v. United Whelan Corp. (30 AD 2d 523, affd. 26 NY 2d 712) and Gitelson v. Du Pont (17 N Y 2d 46) also support the view that rights under a voluntary *783 plan must be gleaned from and determined by the express provisions of the plan itself.
The provisions of the instant plan are set forth in Exhibits E and G of Caltex’ papers. Exhibit E is a photocopy of a pamphlet setting forth the terms of the ICP as originally created in 1953. Exhibit G is a copy of a pamphlet showing the plan as it existed at the time the plaintiffs were discharged.
Under the plan, Caltex contributed a percentage of its consolidated net earnings in accordance with a formula set forth in paragraph 5(a). Pursuant to paragraph 6, this contribution was allocated to the accounts of the participants at the beginning of each year in the ratio that the salary earnings in the previous year of each participant bore to the total salary earnings in the previous year of all participants. The contributions allocated to each participant’s account were invested in equal dollar amounts in the common stock of Standard Oil Company of California and Texaco, Inc., to be purchased by the trustee on the open market and allocated in whole shares and tenths of a share to each participant’s account. Cash dividends received on the stock were to be allocated to each participant’s account and invested in common stock of Standard Oil Company of California and Texaco, Inc.
In the original plan, the provisions relating to the participant’s rights to distribution of benefits were as follows:
11 9. Participation shall commence on the date an employee is first eligible, and end upon termination of his continuous service or the attainment of normal retirement age, whichever shall first occur, except as hereinafter provided in Paragraph 17(a). A participant shall receive distribution of benefits only upon termination of service.”
1 ‘ 14. (a) A participant, or in a proper case his designated beneficiary or legal representative, will be entitled to the participant’s entire account in the event of his:
(1) Death, or
(2) Retirement because of attainment or normal retirement age, or
(3) Retirement under the Permanent Total Disability Plan.
(b) If a participant is discharged for fraud, dishonesty or deliberate disregard of Company rules he will not. be entitled to any part of his account.
(c) A participant upon termination of service for any other reason will be entitled to that percentag-e of his account based on his then attained age in accordance with the following table:
*784 Attained Age Percentage of Account to which Participant Male Female is Entitled Under 55 50 0 55 50 25 56 51 30 57 52 35 58 53 40 59 54 45 60 55 50 61 56 60 62 57 70 63 58 80 64 59 90 65 60 100
(d) In the event it is necessary for a participant to terminate his continuous service on account of partial disability or, in the event he is unable to carry on his normal duties for reasons of his health, as determined by the Committee, such participant upon termination of his continuous service will receive his entire account. The Committee determination will be made in a uniform and impartial manner pursuant to Company regulations regarding medical examinations and other evidence of health.” 1 ‘ 16. In case any participant withdraws from this Plan under Paragraph 14(b) or 14(c) above, the percentage of his account to which he is not entitled will be forfeited. Forfeitures occurring during any Plan Year will be applied to reduce the Company contribution, as provided in Paragraph 5(a).”
“ 17. (a) If a participant withdraws from this Plan because of attainment of normal retirement age, death, or permanent total disability, whereby he is entitled to share in the contributions allocated as of the January 1st coinciding with or next following his termination of service, he will continue as a participant until the date payment is made to him or his beneficiary or legal representative. Payment will be made to a withdrawing participant, or in a proper case to his beneficiary or legal representative, as soon as practicable after such allocation is made. Any dividends or other income on stock credited to his account during the interim between his termination of service and date of payment will be credited to his account.
(b) If a participant withdraws from this Plan for any other reason, his participation will terminate on the date his service terminates and payment will be made to him as soon as practicable after such withdrawal. A withdrawing participant’s *785 account in this case will not he credited with any contribution for any service in the year of such withdrawal.”
The last sentence of paragraph 9 does not, as the plaintiffs contend, grant participants the right to distribution of benefits upon termination of service. The converse is true. It prevents a participant from receiving a distribution of benefits while he is still employed. Paragraphs 14(a), (b) and (d) are inapplicable to the plaintiffs since they did not die, retire because of attainment of normal retirement age or under the permanent total disability plan; nor were they discharged for fraud, dishonesty or deliberate disregard of company rules; nor was their service terminated on account of partial disability.
Paragraph 14(c), however, does apply since it provides for termination of service for “ any other reason”. By virtue of this paragraph in the original plan, a male employee under the age of 55 whose service is terminated for any reason other than those set forth in paragraph 14(a) or (b) is entitled to zero percentage of his account. This paragraph is clear and unambiguous on its face. Paragraph 16 is also clear and unambiguous. A participant ceasing to be an employee by virtue of the conditions specified in paragraph 14(c) has the percentage of his account standing to his credit forfeited. Plaintiffs contend that paragraph 16 applies only to a voluntary withdrawal by a participant. However, since it refers back to paragraph 14(c) providing for termination of service for “ any other reason ”, it is not so limited. Thus, under the express terms of the plan, since the plaintiffs were discharged prior to attaining the age of 55, they are not entitled to any benefits thereunder. (See Schneider v. McKesson & Robbins, 254 F. 2d 827, 829.) The contention that an employee may not be deprived of his benefits under a voluntary plan where he is discharged without cause (but in good faith) before he is eligible to receive benefits under the terms of .the plan has been rejected in several jurisdictions. (Twiss v. Lincoln Tel. & Tel. Co., 136 Neb. 788; Askinas v. Westinghouse Elec. Corp., 330 Mass. 103; Wallace v. Northern Ohio Traction & Light Co., 57 Ohio App. 203; Gorr v. Consolidated Foods Corp., 253 Minn. 375; Bos v. U. S. Rubber Co., 100 Cal. App. 2d 565.)
A contrary rule would, in effect, change an employment at will into an employment until the employee attained the minimum age for benefits and make the amount credited to his account into liquidated damages payable in the event he was discharged without cause, despite the fact that the employer voluntarily established the plan and specifically provided for payment of benefits only upon satisfaction of certain conditions. *786 (Cf. Sabl v. Laenderbank, 30 N. Y. S. 2d 608, 616.) Such a result would be inconsistent with the rule that the plan provisions of the writing (the plan) must determine the rights of the parties (Fernekes v. CMP Ind., 13 N Y 2d 217, supra). In addition, it might be well argued that such a conclusion would be socially undesirable since the probable effect would be to discourage employers from creating voluntary benefit plans. We are not here dealing with the question whether equitable relief would be afforded in a situation in which an employer has discharged his employee on the eve of his eligibility to receive benefits for the sole purpose of avoiding payment of those benefits for there is no evidence in this case to suggest that the plaintiffs’ discharges were in any way related to their future rights under the ICP.
Paragraph 17(b) of the plan must be read in context with paragraphs 14(c) and 16. Bather than determining the right of a participant to payment, it merely determines the date participation in the plan ends and the time when payment begins in a case in which a participant is entitled to payment.
Plaintiffs make the further contention that paragraph 10, which gives participants in the plan the right to direct the trustee on how to vote the shares of stock allocated to their accounts, indicates a vesting of those shares. The implication thus sought to be drawn is impermissible since it would contradict the express words of paragraphs 14(c) and 16. (Sabl v. Laenderbank, 30 N. Y. S. 2d 608, supra.) Moreover, the fact that the shares were allocated among the various participants in the plan was not sufficient to create a trust for those participants who, under its express terms, thereafter became ineligible to receive a distribution. (Cf. Gearns v. Commercial Cable Co., 266 App. Div. 315, affd. 293 N. Y. 105, mot. for rearg. den. 293 N. Y. 755; Dolge v. Dolge, 70 App. Div. 517; McNevin v. Solvay Process Co., 32 App. Div. 610, affd. 167 N. Y. 530.)
I thus am brought to the conclusion that under the provisions of the plan as originally enacted in 1953, the plaintiffs would have had no right to receive benefits upon discharge prior to attaining the age of 55. I conclude further that the subsequent modification to the plan, as set forth in Exhibit G, did not grant any such rights. Paragraph 9 was not modified in any manner. Paragraphs 14, 16 and 17 were modified to read as follows:
“14. (a) A participant, or in a proper case his designated beneficiary or legal representative, will be entitled to the participant’s entire account in the event of his:
(1) Death, or
*787 (2) Retirement because of attainment of normal retirement age, or
(3) Retirement under the Permanent Total Disability Plan, or
(4) Termination of service within the ten year period preceding normal retirement age except as provided in subparagraph (b) of this paragraph.
(b) If a participant is discharged for fraud, dishonesty, deliberate disregard of Company rules, insubordination or other misconduct contrary to Company rules and regulations he will not be entitled to any part of his account.
(c) In the event that prior to the ten year period preceding normal retirement age it is necessary for a participant to terminate his continuous service on account of partial disability or he is unable to carry on his normal duties for reasons of his health, as determined by the Committee, such participant upon termination of his continuous service will receive his entire account. The Committee determination will be made in a uniform and impartial manner pursuant to Company regulations regarding medical examinations and other evidence of health. ’ ’
‘ ‘ 16. In case any participant withdraws from this Plan otherwise than under Paragraph 14(a) or 14(c) above, his account will be forfeited. Forfeitures occurring during any Plan Year will be applied to reduce the Company contribution, as provided in Paragraph 5(a).”
“ 17. (a) If a participant withdraws from this Plan under Paragraph 14(a), he will continue as a participant until the date payment is made to him or his beneficiary or legal representative. Payment will be made to a withdrawing participant, or in a proper case to his beneficiary or legal representative, as soon as practicable after the allocation referred to in Paragraph 6 is made. Any dividends or other income on stock credited to his account during the interim between his termination of service and date of payment will be credited to his account.
(b) If a participant withdraws from this Plan under Paragraph 14(c), his participation will terminate on the date his service terminates and payment will be made to him as soon as practicable after such withdrawal. A withdrawing participant’s account in this case will not be credited with any contribution for any service in the year of such withdrawal. ’ ’
None of the subdivisions of paragraph 14(a) applies to the plaintiffs. The only effect, of the modification is to provide that where termination of service occurs within 10 years preceding the normal retirement age of 65, a participant is entitled to his entire account instead of a percentage thereof as provided in *788 paragraph 14(c) of the original plan, unless such termination is occasioned by one of the reasons set forth in paragraph 14(b) having to do with fraud, dishonesty and similar misconduct. Clearly, this paragraph is inapplicable. The provisions of paragraph 14(d) of the original plan are now contained in paragraph 14(c), again having no application to the plaintiffs. The modified paragraph 16 is even clearer than it was before for it unambiguously provides that where a participant withdraws from the plan, otherwise than under paragraph 14(a) or 14(c), his account is forfeited. Nothing in that paragraph limits the forfeiture to a voluntary withdrawal. On its face, paragraph 17 now has no application to the plaintiffs, referring only to withdrawals from the plan under paragraphs 14(a) and 14(c).
Accordingly, it is clear that under both the original and the modified plan participants are expressly precluded from receiving distribution of the shares of stock allocated to their accounts where they are discharged without cause prior to attaining age 55. Summary judgment is granted dismissing the complaint as against the defendant Caltex. Since plaintiffs fail to make any showing whatever of any rights against the remaining defendants, summary judgment is also granted dismissing the complaint as against those defendants. In view of this determination, the defendants’ cross motion is denied as academic.