B. Elmer MOORE, Appellant,

v.

The HOME INSURANCE COMPANY, a corporation, Appellee.

No. CA 77–2045.

United States Court of Appeals, Ninth Circuit.

Aug. 3, 1979.

James R. Figliulo, Miller, Pitt & Feldman, Tucson, Ariz., for appellant.

Jerry L. Cochran, Burch, Cracchiolo, Levie, Guyer & Weyl, Phoenix, Ariz., for appellee.

Before MERRILL and ANDERSON, Circuit Judges, and SKOPIL *, District Judge.

SKOPIL, District Judge:

## INTRODUCTION

B. Elmer Moore challenges the termination of his employment by The Home Insurance Company ("the company"). He contends that he had been discharged in violation of his employment contract. He seeks recovery of employer pension contributions and for equitable relief. The district court granted the company's motion for summary judgment on all claims. We affirm.

Our review is to ascertain whether there were any genuine issues of material fact that would preclude summary judgment. Accepting Moore's view of the facts, we must determine whether there is sufficient evidence to support (1) an action for wrongful termination of employment, or (2) relief under equitable or quasi-contract theories.

## FACTS

The company hired Moore in 1962. In May 1975, at the age of 44, he was discharged. The discharge took place some seven and one-half months before a substantial vesting of his pension benefits. Moore's initial employment was for an indefinite term. He asserts that over the years he was told that he would be retained as long as he did a good job. When he began his employment, he received a com-

* Honorable Otto R. Skopil, Jr., District Judge, United States District Court for the District of Oregon, sitting by designation.

pany brochure emphasizing job security. Feeling that the company offered job security, he refused four other job opportunities. Over the years Moore received a number of merit pay increases. At the time of his discharge he was a claims superintendent. The company concedes that Moore was not discharged for dishonesty, misconduct, or insubordination. It claims that Moore was fired for "inconstancy in leadership qualities since 1972." The company's performance audits of Moore's office show both praise and criticism of Moore's work. At the time of his discharge, he wanted to preserve his pension. In the past the company had permitted employees to be demoted rather than discharged. Moore requested a demotion. The company refused.

## THE EMPLOYMENT CONTRACT

■ Because our jurisdiction is based on diversity, we must apply Arizona law. Absent special circumstances, an indefinite employment contract is terminable at will in Arizona. *Horizon Corp. v. Weinberg,* 23 Ariz.App. 215, 531 P.2d 1153 (Ariz.1975); *Builders Supply v. Shipley,* 86 Ariz. 153, 341 P.2d 940 (Ariz.1959); *Larsen v. Motor Supply Co.,* 117 Ariz. 507, 573 P.2d 907 (Ct.App. 1977). This means that either party may terminate the contract at any time for any reason or for no reason at all. See generally, Annot., "Employee's Arbitrary Dismissal As Breach of Employment Contract Terminable at Will", 62 A.L.R.2d 271 (1975).

■ There was no written employment agreement. There is no genuine issue that the initial employment contract was for an indefinite term. Nor was there evidence of a subsequent bargain for consideration to create either a contract for a definite term or a contract terminable only for good cause. See *Speegle v. Board of Fire Underwriters,* 29 Cal.2d 34, 172 P.2d 867, 870 (Cal.1946). Compare *Zimmer v. Wells Management Corp.,* 348 F.Supp. 540, 542 (S.D.N.Y.1972).

■ It is true that every contract contains an implied obligation of fair dealing. Restatement of Contracts 2d, § 231. However, in Arizona the duty of fair dealing

does not limit employment discharges to those for which good cause can be shown. *Larsen v. Motor Supply,* supra, 573 P.2d 907. *Larsen* does recognize a limitation on employment discharges that would violate a public policy. The relevant policy must be "evidenced by either a criminal statute or a statute designed to specifically protect the rights of the employee vis-a-vis the employer." 573 P.2d at 908. Moore maintains that the Employee Retirement Income Security Program (ERISA), 29 U.S.C. § 1001 et seq., establishes such a policy.

■ Moore insists that ERISA requires us to presume his discharge to be unreasonable, thereby placing a burden on the company to justify the discharge. *Amory v. Boyden Associates,* 434 F.Supp. 671 (S.D.N.Y.1976). We decline to follow *Amory.*

ERISA's vesting provisions, 29 U.S.C. § 1053, did not take effect until after Moore's discharge. 29 U.S.C. § 1061. Moore does not refer to any provision of ERISA that would specifically limit the company's ability to discharge him. We reject the contention that ERISA's broad policy statements have independent legal force in this setting. Further, we note that *Amory* does not necessarily state the law of its own circuit. See *Riley v. MEBA Pension Trust,* 570 F.2d 406, 413 (2d Cir. 1977) ("[C]are must be taken not to subvert the intention of Congress to postpone the effective date of the vesting provisions in order to afford a fair opportunity to bring plans and their application in line with the new vesting requirements.").

■ This is not to say that the employer's contractual duty of fair dealing has no meaning. Moore contended that the company discharged him solely to avoid paying him pension benefits. The company concedes that such conduct would violate its duty of fair dealing. The question is whether sufficient evidence is available to raise this claim. Moore's evidence boils down to three elements: (1) He received merit increases over the years; (2) he was fired seven and one-half months before his benefits would have vested; and (3) the

company refused to demote him instead of discharging him. The company offered evidence to show that it was dissatisfied with Moore's performance. The company's evaluation reports going back several years reflected strengths and weaknesses in Moore's performance. Some of the weaknesses were considered to be significant. In view of this evidence it cannot be said that the company fired Moore solely to defeat his pension benefits. This is in contrast to the cases Moore cites in his brief. In *Coats v. GMC,* 3 Cal.App.2d 340, 39 P.2d 838 (Cal. 1934), for example, evidence was introduced to show not only that the plaintiff-employee had been commended by his superiors for his work but that he was fired in order to make room for one who was friendly with a member of the board of directors. Moore made no similar showing. Moore's suspicion of improper motives, unsupported by stronger evidence, is insufficient to raise an issue of fact. Under the liberal discovery rules of the Federal Rules of Civil Procedure we must assume that if firmer evidence existed, Moore would have discovered it.

■ Moore's other contract arguments must also fail. The company had the right to discharge Moore, so it did not wrongfully prevent him from fulfilling conditions precedent to his eligibility for pension benefits. *Security Nat. Life Ins. v. Pre-Need Camelback Plan,* 19 Ariz.App. 580, 509 P.2d 652 (1973). Similarly, although the pension benefits were deferred compensation, Moore's right to them was contingent. They were due him only if he met eligibility requirements. *Stanley v. Caltex Petroleum Corp.,* 63 Misc.2d 780, 313 N.Y.S.2d 836, 838 (1970), aff'd 37 A.D.2d 1049, 328 N.Y.S.2d 369 (App.Div.). Since he did not, he has no claim on this basis.

### EQUITY AND QUASI–CONTRACT CLAIMS

■ Moore claims that his termination was inequitable because it prevented him from obtaining pension benefits. If there were evidence that his termination was in bad faith, there might be sufficient basis for an equitable claim. However, there is insufficient evidence of bad faith to create an issue of fact. We reject Moore's claim that this record justifies the extraordinary measure of imposing a constructive trust upon a *pro rata* share of the pension fund. On similar reasoning, we reject Moore's contention that the record supports a claim of unjust enrichment. In the area of pension benefits, absent extraordinary circumstances, courts have declined to use equitable or quasi-contract remedies to "twist the Plan into something it clearly is not". *Schneider v. McKesson & Robbins,* 254 F.2d 827, 830 (2d Cir. 1958). Compare *Lucas v. Seagrave Corp.,* 277 F.Supp. 338 (D.Minn. 1967) (the possibility that a large group of employees was terminated to defeat their pension benefits precluded a grant of summary judgment in the employer's favor); *Fredericks v. Georgia-Pacific Corp.,* 331 F.Supp. 422 (E.D.Pa.1971) (allegations that an employer harassed the plaintiff-employee into leaving his employment, thereby forfeiting stock bonuses and purchase options, state a claim on which relief may be granted.).

The district court properly granted summary judgment. The judgment is affirmed.