Richard R. TITSCH, Plaintiff,

v.

RELIANCE GROUP, INCORPORATED, Lowell C. Freiberg, Robert M. Steinberg, Saul P. Steinberg, and the Retirement Committee of the Pension Plan of Reliance Group, Incorporated, Reliance Group Incorporated Stock Option Committee, Defendants.

No. 81 Civ. 4153 (RLC).

United States District Court,
S. D. New York.

Sept. 16, 1982.

Luigi P. De Maio, New York City, for plaintiff.

Willkie, Farr & Gallagher, New York City, for defendants; Anthony F. Phillips, Robert J. Kheel, Timothy G. O'Connor, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, Richard R. Titsch, was employed by defendant Reliance Group, Incorporated ("RGI") from October 30, 1972 through May 17, 1981. Claiming that his discharge from RGI's employ was abusive and wrongful, Titsch asserts five causes of action against RGI, three individual principals thereof and two management committees. Defendants move for summary judgment on the ground that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

In the complaint, plaintiff ascribes to defendants three motivations for terminating his employment: preventing Titsch's pension rights from vesting; preventing his exercise of certain stock options; and retaliating for plaintiff's refusal to cooperate in an alleged scheme to present a fraudulent insurance claim. Complaint ¶ 22. The first cause of action concerns defendants' alleged violation of 29 U.S.C. § 1140 in interfering with pension rights to which plaintiff would have become entitled. The second claim asserts that defendants wrongfully terminated plaintiff's employment so as to prevent him from exercising certain stock options. In his third claim, plaintiff seeks an accounting of his stock appreciation rights. The remaining counts are grounded in abusive discharge and breach of an implied covenant of good faith, respectively. Titsch admits that the gravamen of the complaint is the allegation that he was fired for resisting defendants' efforts to construct a fraudulent insurance claim, while the loss of stock option and pension plan benefits were mere consequences of the termination. Titsch affidavit ¶ 2.

The parties dispute the reasons for Titsch's termination. In his most recent submission to the court, plaintiff asserts that defendants retaliated against him for refusing to prepare a report allegedly to be used in connection with a fraudulent insurance claim. Specifically, Titsch claims to have refused to incorporate certain derogatory phrases in a report concerning the activities of a fellow employee and advised his superiors that a crime bond claim was not proper under the circumstances. Titsch affidavit ¶ 11. Defendants assert that Titsch was fired because his own conduct in the transaction in question showed poor judgment and reduced his superiors' faith in him. *See* Freiberg deposition at 70–71. Defendants also note that no surety claim ever was filed. Defendants' Statement Pursuant to Rule 3(g) ¶ 41.

■ RGI contends that the reasons for Titsch's discharge are irrelevant to any issue in the instant lawsuit. The long-standing rule in New York is that an employee such as Titsch "who does not work under an agreement for a definite term of employment may be discharged at any time, with or without cause." *Grozek v. Ragu Foods, Inc.,* 63 A.D.2d 858, 406 N.Y.S.2d 213, 214

(4th Dep't 1978). Under the aegis of this doctrine, RGI seeks summary judgment as a matter of law. Plaintiff suggests that New York courts now recognize an exception to the rigid old rule and that triable issues exist as to its applicability. In addition, he purports to make out a claim under 29 U.S.C. § 1140.

■ The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., makes it unlawful for an employer to discharge a participant in a benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. An employee discharged before his retirement rights vest may sue to redress a violation of § 1140. See Calhoun v. Falstaff Brewing Corporation, 478 F.Supp. 357, 359–60 (E.D.Mo.1979). Plaintiff's first cause of action mirrors the statutory language. Defendants argue, however, that Titsch failed to satisfy certain rigorous pleading requirements imposed by ERISA.

■ RGI claims that a plaintiff invoking § 1140 must plead and prove that the *sole* reason for his termination was to interfere with pension rights. There is no support in the statute or prior decisions for such a strict standard. The ERISA cases cited by defendants use restrictive language only when they describe the allegations presented. *See, e.g., Calhoun, supra* at 359. No ERISA decision indicates that the statute mandates such particularized pleadings. The fact that certain individual plaintiffs have seen fit to ascribe to their employers a single motivation for their conduct cannot impose upon other plaintiffs pleading burdens not established by Congress or the courts. In the absence of legislative guidance, and in view of the remedial purposes of § 1140, *see West v. Butler,* 621 F.2d 240 (6th Cir. 1980) (discussing legislative history), the court is unwilling to create new obstacles for ERISA plaintiffs. The rule advocated by defendants would be particularly harsh where a plaintiff complained of several allegedly improper reasons for termination.

*Moore v. The Home Insurance Company,* 601 F.2d 1072 (9th Cir. 1979), is inapposite. As RGI concedes, *Moore* was not an ERISA case. There is no reason to infuse § 1140 with Arizona's law of contractual fair dealing.

■ While plaintiff's first cause of action is pleaded correctly, however, it cannot withstand defendants' motion. The extra pleading material submitted in connection with defendants' motion makes clear that no genuine issue exists as to whether RGI intended to interfere with Titsch's pension rights. Rather, plaintiff abandons his claim that RGI had several wrongful reasons for firing him and focuses exclusively on his refusal to participate in insurance fraud as the motivating factor. *See, e.g.,* Plaintiff's Statement Pursuant To Rule 3(g) ¶ 1; Titsch affidavit ¶ 2. No ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment. Plaintiff's papers make clear that after full discovery no evidence exists to indicate that defendants sought to interfere with his pension benefits. As to the first cause of action, therefore, defendants' motion for summary judgment is granted. *See Guitar v. Westinghouse Electric Corporation,* 396 F.Supp. 1042, 1053 (S.D.N.Y. 1975) (Carter, J.), *aff'd,* 538 F.2d 309 (2d Cir. 1976) (after a full opportunity for discovery, summary judgment cannot be defeated by mere conjecture).

The second and third causes of action allege that RGI violated an implied obligation of good faith and fair dealing by firing Titsch and thereby abrogating his right to exercise certain written stock options. The fifth cause of action invokes the same purported obligation in connection with the oral employment agreement between Titsch and RGI. Defendants assert that an at will employee is precluded from bringing such claims against an employer.

■ Titsch attempts to use the written nature of the option agreements to supplement his rights as an at will employee. This effort cannot succeed. In fact, the

express language of the options makes clear that they were contingent upon Titsch's continued employment. The option agreement is subject to RGI's right to terminate its at will employees. *See Stanley v. Caltex Petroleum Corporation,* 63 Misc.2d 780, 313 N.Y.S.2d 836 (S.Ct. Queens Co. 1970), *aff'd,* 37 A.D.2d 1049, 328 N.Y.S.2d 369 (2d Dep't 1971) (employment at will doctrine and the express language of a voluntarily established benefit program control the rights of terminated employees). *Zimmer v. Wells Management Corporation,* 348 F.Supp. 540 (S.D.N.Y.1972) (Brieant, J.) does not aid plaintiff's cause because it involved a written employment contract and the termination there resulted in the forfeiture of stock which the employee *previously* bought and paid for.

■ The viability of plaintiff's second, third and fifth causes of action thus rests on his ability to forge an exception to the employment at will doctrine. This task is confronted directly by the fourth cause of action, which is grounded in the theory of abusive or wrongful discharge. Summary judgment must be granted dismissing the fifth cause of action because to the extent there is any legal basis for plaintiff's claims it is grounded in tort rather than contract. *See Placos v. Cosmair, Inc.,* 517 F.Supp. 1287, 1289 (S.D.N.Y.1981) (Sofaer, J.); *Savodnik v. Korvettes, Inc.,* 488 F.Supp. 822, 824 (E.D.N.Y.1980).[1] If New York recognizes the tort of wrongful discharge and if there is a genuine issue of material fact preventing summary disposition of plaintiff's claim grounded in that theory, then defendants' motion with respect to the second and third causes of action must be denied.

An investigation of the history of abusive discharge doctrine in New York reveals unfortunate uncertainty. The Court of Appeals has never endorsed the theory. Instead, it has foregone recent opportunities to reject or modify the at will doctrine.

*Boniuk v. New York Medical College,* 535 F.Supp. 1353, 1358 (S.D.N.Y.1982) (Sofaer, J.) (reviewing most recent Court of Appeals decisions and concluding that the at will doctrine remains controlling New York law). Lower state courts have reached conflicting conclusions as to the existence of a public policy exception to the at will doctrine. *Compare Edwards v. Citibank, N.A.,* 100 Misc.2d 59, 418 N.Y.S.2d 269, 271 (S.Ct. N.Y.Co.1979), *aff'd,* 74 A.D.2d 553, 425 N.Y. S.2d 327 (1st Dep't 1980) (claim that firing of at will employee violated public policy held not actionable) with *Chin v. American Telephone & Telegraph Company,* 96 Misc.2d 1070, 410 N.Y.S.2d 737, 741 (S.Ct.N. Y.Co.1978), *aff'd,* 70 App.Div.2d 791, 416 N.Y.S.2d 160 (1st Dep't 1979) (discussing the elements of the tort of abusive discharge, but granting summary judgment against plaintiff because a new cause of action could not be recognized in the absence of a substantial showing that its elements have been satisfied in the given case). These decisions reveal more allegiance to the at will doctrine than impatience with it. *See, e.g., Pavolini v. Bard Air Corp.,* 88 A.D.2d 714, 451 N.Y.S.2d 288, 289 (3d Dep't 1982). *See generally* Harmon & Kolko, *Developments in the Law Covering Abusive Discharge,* N.Y.L.J., Aug. 26, 1982, at 1 (reviewing recent New York decisions and concluding that state courts generally have adhered to the at will doctrine and dismissed abusive discharge claims).

Several federal district court rulings have followed the analysis set forth and then rejected in *Chin, supra. See, e.g., Sherman v. St. Barnabas Hospital,* 535 F.Supp. 564, 571 (S.D.N.Y.1982) (Goettel, J.); *Hovey v. Lutheran Medical Center,* 516 F.Supp. 554, 557–8 (E.D.N.Y.1981); *Placos, supra* at 1289. In *Boniuk, supra,* at 1356 n.1, however, Judge Sofaer reconsidered his ruling in *Placos* and held that the law of New York does not yet include the doctrine of

---

1. *But see Sherman v. St. Barnabas Hospital,* 535 F.Supp. 564, 573–4 & nn. 14, 15 (S.D.N.Y. 1982) (Goettel, J.) (noting that the classification of abusive discharge as a tort or contract theory is a difficult question and permitting plaintiff to press both theories). Given the court's conclusion regarding the viability of the abusive discharge theory in New York, plaintiff's fifth cause of action could not survive defendants' motion even under the *Sherman* analysis.

abusive discharge. Because the "data suggesting that change in the established law may be imminent is unconvincing," *id.* at 1358, and because it is not the province of a federal court sitting in diversity to revise state common law, *id.* at 1357, the court finds that Titsch has failed to state a cause of action and that judgment is due defendants as a matter of law. Without the imprimatur of the Court of Appeals or a consensus among the lower state courts, recognition of a new cause of action is inappropriate.

For the reasons set forth above, defendants' motion for summary judgment is granted despite the existence of a factual dispute between the parties.

IT IS SO ORDERED.