[Civ. No. 67490. Second Dist., Div. Six. Dec. 28, 1983.]

JERRY CROSIER, Plaintiff and Appellant, v.
UNITED PARCEL SERVICE, INC., Defendant and Respondent.

COUNSEL

Knapp, Petersen & Clarke, Ryan C. Knapp, Barry Bartholomew, Alan J. Beardsley and Peter J. Senuty for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Willard Z. Carr, Jr., Stephen E. Tallent and William D. Claster for Defendant and Respondent.

## OPINION

**GILBERT, J.**—Plaintiff Jerry Crosier (Crosier) appeals from a summary judgment entered against him in his action for wrongful discharge from employment. We are asked to decide whether Crosier presented any triable issues of material fact which would preclude summary judgment. We affirm the judgment entered by the trial court.

### FACTS

Crosier began his 25-year career with defendant United Parcel Service, Inc. (UPS) in 1956. He worked as a driver for 14 years until 1972, when UPS promoted him to manager of its Westlake Center. In 1978 he was promoted again to manager of the Ventura Center where he supervised approximately 65 employees. Crosier's supervisors consistently reviewed his work performance favorably and soon after his promotion to management in 1972, he received UPS stock under the management incentive program.

In December 1979 Crosier began dating a nonmanagement employee who also worked at the Ventura Center. They began living together in May 1980 and at one point during their relationship, Crosier promoted her at UPS.

This promotion caused employee comment and another employee complained of favoritism to Crosier's supervisors.[1]

Since 1975 UPS has had an unwritten rule proscribing social relationships between management and nonmanagement employees. The purposes of the rule are to avoid misunderstandings, complaints of favoritism and possible claims of sexual harassment.[2]

The rule prohibiting social fraternization and its purposes were discussed by senior managers several times in 1977 and in 1979, at meetings which Crosier attended. In May 1979 Crosier and Crosier's supervisor, Ronald Worthen (Worthen), discussed a rumor that Crosier was dating a nonmanagement employee at the Westlake Center. Although Crosier responded that the rumor was unfounded, Worthen reminded him of the company's rule against fraternization. Due in part to the effect of this rumor on management -employee relations, UPS transferred Crosier to the Ventura Center.

In July 1980 Crosier's then supervisor, Wesley Kinsley (Kinsley), questioned Crosier with respect to a rumor that he was living with a nonmanagement employee. Crosier denied the rumor because he believed "it didn't serve any purpose to discuss it." Several months later, in September 1980, Kinsley asked Crosier again about the rumored relationship. Crosier then admitted the relationship existed and that he had lied to Kinsley earlier.

Shortly thereafter, Crosier discussed the matter with Kinsley and Kinsley's supervisor, Albert Boerman (Boerman). At this meeting, Crosier's supervisors emphasized that his relationship with a coemployee, and his attempt to conceal it by lying about its existence were serious problems. They also criticized certain aspects of his work. Boerman instructed Crosier to take a vacation immediately while Boerman considered the matter. Crosier was dismissed upon his return from vacation. Failing to heed Hamlet's advice, UPS sent Crosier a formal letter of dismissal stating that he was "terminated due to [his] overall job performance as we discussed on October 27, 1980."[3]

---

[1]UPS does not contend this was an unfair promotion in violation of any company rules with respect to merit or seniority.

[2]Federal regulation expressly holds employers liable for sex discrimination where opportunities and benefits are awarded based on sexual favoritism. 29 Code of Federal Regulations, section 1604.11 (g) provides in pertinent part: "Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit."

[3]"Suit the action to the word, the word to the action. . . ." (Shakespeare, Hamlet, act III, scene 2.)

Crosier then brought his action for breach of contract containing a covenant of good faith and fair dealing; breach of the covenant of good faith and fair dealing; and, wrongful interference with business relations.[4] Following some months of discovery, UPS moved for summary judgment predicated on the following: (1) it admitted for purposes of the motion that Crosier's oral employment contract contained an implied covenant of good faith and fair dealing; (2) there are no triable issues of fact with respect to the reasons for Crosier's discharge; and (3) as a matter of law it did not breach the covenant by discharging Crosier for those reasons.

The trial court granted the motion after finding there were no material issues of fact to be tried and that UPS, as a matter of law, possessed just cause to discharge Crosier. Crosier appeals from this judgment, contending there are issues of fact pertaining to just cause since the rule against fraternization between management and nonmanagement employees is substantively unreasonable and selectively enforced. He also contends that his dismissal was procedurally unfair.

## DISCUSSION

In the last 75 years, statutes and judicial decisions have restricted the plenary power of the employer to control the workplace by promoting unionization, establishing a minimum wage, promoting equality of employment and opportunity, promoting employee health and safety, and guaranteeing retirement income.[5] Continuing this trend, recent decisions have permitted nonunion private sector employees to bring actions against their employers for wrongful discharge from employment. Although classed as "employees at will," the courts have found exceptions to the traditional employment-at-will doctrine to permit employees to bring these suits.[6] This doctrine is embodied in California Labor Code section 2922, which provides

---

[4]Crosier has not served any named defendants with respect to the action for wrongful interference with business relations. Since he has filed an at-issue memorandum declaring that all parties have been served, he has apparently abandoned this cause of action. (Cal. Rules of Court, rule 206 (a)(3).)

[5]Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith* (1980) 93 Harv.L.Rev. 1816, 1827.

[6]It is estimated that 60-65 percent of American employees are employed on an at-will basis, approximately 22 percent are unionized and 15 percent are federal or state employees. American employees enjoy dissimilar levels of protection from wrongful dismissal. Those covered by collective bargaining agreements and those employed by federal or state governments can be discharged only for cause. Until recent decisions, at-will private sector employees possessed little protection from wrongful discharge. Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, supra,* 93 Harv.L.Rev. page 1816, footnote 2; Clapp, *Recognizing the Employee's Interests in Continued Employment - The California Cause of Action for Unjust Dismissal* (1980) 12 Pacific L.J. 69, 82, footnote 95.

in pertinent part that "(a)n employment, having no specified term, may be terminated at the will of either party on notice to the other." Older decisions considering the discharge of an at-will employee have validated the right of the employer to discharge for any cause or even no cause. (*Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 167 [76 Cal.Rptr. 680]; *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549, 553 [36 Cal.Rptr. 880].)

In recognition of present economic realities and the reasonable expectations of the parties, three recent California decisions have tempered the employment-at-will rule by limiting the employer's right to dismiss where (1) the employee refuses to violate a public policy in carrying out his duties (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]); (2) the contract contains an implied-in-law covenant of good faith and fair dealing (dictum in *Tameny, supra,* 27 Cal.3d at p. 179, fn. 12; alternative holding of *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 455-456 [168 Cal.Rptr. 722]); or (3) the employment contract contains an implied-in-fact provision that the employer would not act arbitrarily towards its employees (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 329 [171 Cal.Rptr. 917]). *Tameny* and *Cleary* would permit a wrongfully discharged employee to recover under a tort theory of damages while *Pugh* indorses recovery under traditional contract principles.

Crosier bases his action on the implied-in-law covenant of good faith and fair dealing described in *Tameny* and *Cleary, supra.* UPS concedes, for purposes of the summary judgment motion, that Crosier's oral employment contract contained this covenant but argues it dismissed him consistent with its duties under the covenant.

The meaning and application of the covenant to employment cases has been in small part explored.[7] *Cleary* states that the covenant requires each party to act so as to not deprive the other of the benefits of the contract. (*Cleary, supra,* 111 Cal.App.3d at p. 453.) *Cleary* also requires a showing of legal cause to dismiss an employee of long service. "Termination of employment without legal cause after such a period of time offends the implied-in-law covenant of good faith and fair dealing contained in all contracts, including employment contracts." (*Cleary, supra,* at p. 455.) Plaintiff bears the burden of proving unjust dismissal; defendant may defend that it did exercise good faith and fair dealing with respect to the plaintiff employee. (*Cleary, supra,* at p. 456.)

*Pugh,* with respect to the burden of establishing wrongful dismissal under an implied-in-*fact* covenant to dismiss only for just cause, requires the

---

[7]Miller and Estes, *Recent Judicial Limitations on the Right to Discharge: A California Trilogy* (1982) 16 U.C. Davis L.Rev. 65, 87-95.

employee to demonstrate a prima facie case of wrongful termination. "The burden of coming forward with evidence as to the reason for . . . termination now shifts to the employer. Appellant may attack the employer's offered explanation, either on the ground that it is pretextual (and that the real reason is one prohibited by contract or public policy [citation]), or on the ground that it is insufficient to meet the employer's obligations under contract or applicable legal principles. Appellant bears, however, the ultimate burden of proving that he was terminated wrongfully. [Citations.]" (*Pugh, supra,* 116 Cal.App.3d 311, 329-330.)

Since the implied-in-law covenant and implied-in-fact covenant are similar in that both require just cause for dismissal, we find the burdens of producing evidence and proof articulated in *Pugh* a reasonable approach to a discharge allegedly in violation of the covenant of good faith and fair dealing.

We turn to the evidentiary showing Crosier made in response to the motion for summary judgment.

Crosier·contends that his dismissal for fraternization with a non-management employee was pretextual and that he may have been dismissed for selling his UPS stock to meet personal financial exigencies, for expressing reticence to relocate again when he transferred to Westlake Center in 1972, or for management's belief that he was married while cohabiting with another woman. His evidentiary showing consisted of his declaration that he knew Boerman didn't like employees to sell UPS stock; the deposition of another UPS employee, Dave Becker (Becker), who stated he believed he was asked to resign because he sold UPS stock; Crosier's declaration that he had expressed reluctance to relocate again after his transfer to Westlake Center; and, the deposition of Boerman that he believed Crosier to have been married while dating and living with another coemployee. There was evidence before the court, however, that Crosier knew he was dismissed for violating the rule against social fraternization with nonmanagement employees. He alleges in his complaint that this was the reason he believes he was dismissed. In his deposition he states that he thought he was dismissed due to "his association with the hourly employee." Also his supervisors stated that they discussed violation of the fraternization rule with him at the meeting proximate to his dismissal.

Decisions considering triable issues of fact where an employer is allegedly in breach of an employment contract to retain an employee "so long as his services are satisfactory" are pertinent here. ■ These decisions permit a jury to find the factual reasons for an employee's dismissal where evidence tends to show that discharge was due to reasons other than dissatisfaction with services. (*Cleary, supra,* 111 Cal.App.3d at p. 453; *Petermann v.*

*International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 189 [344 P.2d 25]; *Coats* v. *General Motors Corp.* (1934) 3 Cal.App.2d 340, 348 [39 P.2d 838].) ▮ Here, however, Crosier has not made a sufficient showing to raise an issue of fact. His suspicions of improper motives are primarily based on conjecture and speculation. Without the support of stronger evidence, he does not show that the reasons for his discharge were pretextual and so, does not sustain his burden under *Pugh.* (*Moore* v. *Home Ins. Co.* (9th Cir. 1979) 601 F.2d 1072.)

▮ Crosier also contends that violation of the nonfraternization rule does not constitute good cause for dismissal.[8] He argues that the rule is substantively unreasonable because UPS does not have a rule requiring the dismissal of an employee accused of sexual harassment. He also argues that the rule is selectively applied since others, still employed by the company, have dated or continue to date across management lines. To support these contentions, he offers the deposition of a senior manager who states that UPS has no dismissal policy with respect to employees accused of sexual harassment; the declaration of another center manager stating that management and nonmanagement employees at his center socialized after work;[9] and, the depositions of an employee and a former employee who both stated that they dated (and one married) nonmanagement employees.

The court in *Pugh* examined "good cause" and concluded it was " 'largely relative in . . . connotation, depending upon the particular circumstances of each case. [Citation.]' " It connotes, however, " 'a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. [Citation.]' " (*Pugh, supra,* 116 Cal.App.3d at p. 330.) ▮ In articulating "good cause," the court must balance the employer's interest in operating his business efficiently and profitably with the interest of the employee in maintaining his employment and the interest of the public in maintaining a proper balance between the two. We are sensitive to the difficulties presented by undue restrictions on the ability of an employer to

---

[8]Two other decisions have considered and upheld the dismissal of employees romantically involved with coworkers. *Ward* v..*Frito-Lay, Inc.* (1980) 95 Wis.2d 372 [290 N.W.2d 536], considered whether the employer violated any public policy or the implied covenant of good faith by discharging one of the employees. The court found no statutorily or constitutionally guaranteed rights were involved and noted that the employer kept the employee on its payroll after dismissal to permit the employee's pension to vest. The employees' romantic relationship had created dissension, insubordination and a grievance. The court upheld the employer's decision as a legitimate business judgment.

*Rogers* v. *International Bus. Machines Corp.* (W.D. Pa. 1980) 500 F.Supp. 867, found no violation of public policy in dismissing an employee for his relationship with a subordinate. The court found that Pennsylvania did not recognize an implied covenant to discharge only for good cause.

[9]This particular center manager was dismissed in April 1980 for socializing with a nonmanagement employee on a ski trip.

discipline its staff and concur with the statement in *Pugh* that an employer "must of necessity be allowed substantial scope for the exercise of subjective judgment" where an employee holds a managerial position. (*Pugh, supra,* at p. 330.)

▇ Crosier has a strong interest in the stability of his employment and we are mindful that occupational mobility is drastically reduced among older workers who are wedded to a particular job or skill. UPS, however, is legitimately concerned with appearances of favoritism, possible claims of sexual harassment and employee dissension created by romantic relationships between management and nonmanagement employees.[10] The public also has an interest in the prevention of sexual harassment and favoritism. Crosier received several warnings of the nonfraternization policy and so, cannot claim his dismissal was a surprise. One other manager had been dismissed several months prior for violating the same policy. Other employees who have or are fraternizing may not serve in the same managerial capacity as Crosier, and so, UPS must be permitted ample latitude in disciplining its personnel. Crosier has not made a colorable claim that UPS failed to act in good faith toward him. For this reason, summary judgment was proper. (*Moore* v. *Home Ins. Co., supra,* 601 F.2d 1072.)

UPS urges the court to adopt a rule of just-cause dismissal which would preclude a review of the legitimacy of an employer's business reasons for discharging an employee. This rule would parallel the business judgment rule which prevents judicial scrutiny of the acts of corporate directors using honest judgment.[11] We decline to adopt such a rule. An implied-in-fact or implied-in-law promise to dismiss an employee only for cause would be illusory if the employer were permitted to be the sole judge and final arbiter of the propriety of the policy giving rise to the discharge. If we were to adopt such a rule, an employer could implement a patently absurd business policy carapaced from judicial inquiry.

Crosier also argues that his dismissal was procedurally unfair. He concedes there is no precedent for extending procedural due process or fair hearing requirements to at-will employees but urges that the spirit of the California wrongful discharge decisions encourage such a rule.

▇ California civil service employees who are "permanent" employees under the statutory scheme possess a property interest in the continuation

---

[10]Federal regulations require an employer to act to prevent sexual harassment. 29 Code of Federal Regulations section 1604.11 (f) provides in pertinent part: "An employer should take all steps necessary to prevent sexual harassment from occurring. . . ."

[11]Note, *Defining Public Policy Torts in At-Will Dismissals* (1981) 34 Stan.L.Rev. 153, 171.

of their employment. This interest requires they be apprised of the notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based and the right to respond to the disciplining authority. (*Williams* v. *Department of Water & Power* (1982) 130 Cal.App.3d 677, 681 [181 Cal.Rptr. 868].) These protections are based upon the property interests afforded by statute, however, and are not applicable in this case.

■ Individuals who are prevented from practicing a profession by reason of exclusion or expulsion from membership in certifying organizations are entitled to a "fair procedure" with respect to exclusion or expulsion. This "fair procedure" need not be equivalent to a court trial but must provide the individual with adequate notice of the charges and an opportunity to respond. (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 555 [116 Cal.Rptr. 245, 526 P.2d 253]; *Ezekial* v. *Winkley* (1977) 20 Cal.3d 267, 278-279 [142 Cal.Rptr. 418, 572 P.2d 32].) These decisions are based upon the ability of the organization to frustrate the practice of a profession and prevent the enjoyment of economic and professional benefits therefrom. The basis for these decisions is not analogous to the case here, for although Crosier may have difficulty reentering the job market, he is not foreclosed from pursuing his trade or profession with another employer.

Accordingly, the judgment of the trial court is affirmed.

Stone, P. J., and Abbe, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1984.