Marianne McKAY, Plaintiff,

v.

CAPITAL CITIES COMMUNICATIONS, INC., Capital Cities Media, Inc., Fairchild Publications, Inc., Fairchild Publications, Inc. Salaried Employees Retirement Plan, Defendants.

No. 82 Civ. 6642(MEL).

United States District Court, S.D. New York.

April 9, 1985.

Wendy, Adler & Liss, New York City, for plaintiff; Solomon Liss, New York City, of counsel.

Satterlee & Stephens, New York City, for defendants; Henry J. Formon, Jr., New York City, of counsel.

LASKER, District Judge.

From March of 1973 until February of 1982 plaintiff Marianne McKay was employed by the Fairchild Publications Division ("Fairchild") of defendant Capital Cities Media, Inc. She was initially hired by Gene Fahy, advertising director of Women's Wear Daily ("WWD") and W, as an advertising salesperson. Both WWD and W are periodicals devoted to charting

the ever-changing course of women's fashions. WWD is a daily trade newspaper read widely in the fashion industry, while W, began in 1972 as a WWD "spin-off," is a somewhat more sophisticated bi-weekly publication intended to be read by "a select high income consumer, particularly women...." Affidavit of Gene Fahy ¶ 4, Sept. 20, 1983, *reprinted in,* Defendants' Notice of Motion, filed Sept. 20, 1983.

In May of 1976, Fahy promoted McKay to the position of advertising manager for WWD and W, which, according to Fahy's affidavit, made McKay the second person in charge and gave her considerable authority over advertising matters. *See id.* ¶ 6. McKay was compensated on the basis of a fixed salary and bonus formula, the latter of which was based upon the amount of advertising appearing in WWD or W for a particular year. The bonus formula changed on an annual basis, as W's advertising revenues continued to rise, and was memorialized each year in a confidential memorandum from Fahy to McKay.[1]

All went well for McKay between 1976 and 1982 as, year after year, advertising revenues for W reached record proportions, boosting McKay's bonus. Accordingly, from her first full year as advertising manager until her last, McKay's bonus rose from $25,000 to over $114,000. However, defendants apparently came to believe that the growth in W's advertising revenues was not due solely to McKay's efforts and in early 1982 they attempted to control her bonus by notifying her, as reflected by a series of memos between Fahy and McKay, that her bonus for 1982 would be determined on a "discretionary basis." McKay refused to accept Fahy's new formula and the dispute between them came to a head at a February 26, 1982 meeting in which, McKay testified at her deposition, Fahy wanted her to resign because she would not agree to the new formula. When McKay refused to resign, Fahy fired her. *See* Deposition of Marianne McKay, April 21, 1983, at 277–28, *reprinted in* Defend-

ants' Memorandum of Law, filed Sept. 20, 1983, at 11–12.

McKay subsequently commenced this action on the grounds of wrongful discharge and breach of contract.

Defendants earlier moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted, and plaintiff has cross-moved to amend her complaint to add a federal claim alleging that defendants terminated her employment, *inter alia,* for the purpose of interfering with her pension rights contrary to Section 510 of the Employee Retirement Security Act of 1974 ("ERISA"). 29 U.S.C. § 1140 (1982). The proposed amended complaint alleged that McKay was terminated after nine years of employment by Fairchild, one year before she would have been eligible to receive pension benefits. We found that plaintiff adequately "alleges that the purpose of her discharge with the vesting of her rights" to state an ERISA claim, granted her motion to amend and denied defendants' motion to dismiss. *See McKay v. Capital Cities Communications, Inc.,* 82 Civ. 6642(MEL), mem. at 1–2 (S.D.N.Y. July 26, 1983).

Defendants now move for summary judgment to dismiss the amended complaint arguing that plaintiff's ERISA claim is without merit because it is undisputed that McKay's termination was not related to her pension benefits, and was caused solely by her rejection of the formula to fix her 1982 bonus.

After defendants' motion was submitted, we asked McKay to provide an additional submission on the issue of jurisdiction. In response, McKay provided an affidavit which states that defendants' pension plan requires ten years of service for vesting, that Fahy intended to deprive McKay of her pension rights, and that evidence as to the hiring and firing practices at Fairchild lends support to her allegation that the deprivation of her pension rights was one of the considerations which led to her dis-

---

1. For example in 1977, McKay's bonus was determined by a formula which awarded her $5,000 for the first $1.6 million of W advertising display revenues, 1.5 percent of all revenues between $1.6 and $2 million, and 2 percent of all revenues over $2 million.

charge. McKay states that Fahy told her on numerous occasions that it was preferable to force employees to resign so that Fairchild would not have to make severance payments, that she was aware of at least two Fairchild employees who were harassed into resigning, and that data obtained through discovery reveals that between 1973 and 1982 twenty four employees were discharged by the defendants after eight or nine years of employment.[2]

■ Section 510 of ERISA makes it unlawful for an employer to take steps against an employee who participates in a benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan", 29 U.S.C. § 1140 (1982), and an employee discharged before his or her retirement vests may sue for redress under this provision. *See Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd mem.,* 744 F.2d 1441 (2d Cir. 1983); *Calhoun v. Falstaff Brewing Corp.,* 478 F.Supp. 357, 359–60 (E.D.Mo. 1979). While Section 510 can be invoked without requiring a plaintiff to prove that the sole reason for his or her termination was to interfere with pension rights, *see Titsch v. Reliance Group, Inc., supra,* 548 F.Supp. at 985, in order to prevail under this provision, a plaintiff must show that a defendant specifically intended to violate ERISA, not that the loss of pension benefits was a mere consequence of a termination. *See Watkinson v. Great Atlantic & Pacific Tea Co., Inc.,* 585 F.Supp. 879, 883 (E.D.Pa.1984); *Titsch v. Reliance Group, Inc., supra,* 548 F.Supp. at 985.

■ In this case, McKay's affidavit presents circumstantial evidence as to defendants' intent at the time they terminated her employment. Although the evidence presented indicates that a central reason for firing McKay was her refusal·to accept a formula which would limit the size of her annual bonus, McKay's allegations are sufficient to create a question of fact as to whether the defendants intended to defeat her eligibility for pension benefits at the time they elected to terminate her employment. The issue thus presented cannot be eliminated by additional submissions from the defendants and prevents granting this motion for summary judgment. Accordingly, that portion of defendants' motion which seeks to dismiss plaintiff's ERISA cause of action is denied.[3]

■ Defendants also move for summary judgment to dismiss the amended complaint's state law claims based upon wrongful discharge and breach of contract on the ground that McKay was an "at will" employee and is accordingly precluded from asserting these causes of action under New York law. *See Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). McKay contends that a question of fact exists as to whether she was employed at will or pursuant to a written contract because from 1977 onwards she received

---

2. By letter dated May 14, 1984 defendants wrote to object to McKay's affidavit and requested an opportunity to respond to it by a formal submission. Inasmuch as, for the reasons discussed *infra,* McKay's affidavit establishes that questions of fact exist as to defendants' intent, further submissions on this issue are unnecessary.

3. Defendants' motion for sanctions under Federal Rule of Civil Procedure 11 is denied. Defendants contend that the representation made by plaintiff's counsel in support of the motion to amend the complaint, that he learned of the basis of the amended complaint's ERISA claim only after the deposition of McKay and Fahy had been taken, violated Rule 11 because nothing in the depositions supports counsel's representation. Defendants' assertion is undercut by a portion of McKay's deposition reprinted in defendants' memorandum of law in support of this motion in which she testified that Fahy told her to stay at Fairchild another year in order to receive her pension benefits. *See* Defendants' Memorandum of Law, filed Sept. 20, 1983, at 24. Further evidence favoring plaintiff's position is found in her affidavit which states, as McKay points out, that she had personal knowledge of defendants' hiring and firing practices during the period she worked for the defendants. As we noted above, these practices provide *circumstantial evidence* supporting plaintiff's allegation that defendants' intended to interfere with plaintiff's pension benefits. Under such circumstances, and in the absence of affirmative evidence of bad faith on McKay's part, imposition of sanctions under Rule 11 would be unjustified.

from the defendants on an annual basis memoranda setting forth her bonus formula for a particular year and other memoranda calculating her bonus for the preceding year. McKay argues that in her view, these memoranda establish a contractual basis for her employment and that each annual memorandum constituted an employment agreement for a single calendar year.

In *Murphy v. American Home Products, Corp., supra,* the New York Court of Appeals reaffirmed that New York law does not recognize the tort of wrongful discharge and that a claim for breach of an employment contract arising out of the termination of employment cannot be brought unless there exists, *inter alia,* an express limitation on the employer's right of discharge in the contract of employment. *See id.,* 58 N.Y.2d at 306, 448 N.E.2d at 91, 461 N.Y.S.2d at 237. Such a limitation has been recognized to exist in an express provision found in a company's handbook on personnel policies limiting the employer's right to dismiss employees only for "just and sufficient cause," *see Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 459, 461–62, 443 N.E.2d 441, 442, 457 N.Y.S.2d 193, 194 (1982), and in a collective bargaining agreement containing a similar provision. *See Parker v. Borock,* 5 N.Y.2d 156, 159–60, 156 N.E.2d 297, 298–99, 182 N.Y.S.2d 577, 579–80 (1959); *see also Bergamini v. Manhattan and Bronx Surface Transit Operating Authority,* 62 N.Y.2d 897, 899, 467 N.E.2d 521, 522, 478 N.Y.S.2d 857, 858 (1984).

In this case, McKay has produced no documents setting forth a comparable limitation upon defendants' right to terminate her employment and *Murphy, supra,* precludes a finding an implied limitation upon the employer's "unfettered right" to terminate at will employees at any time. *See Carlson v. Viacom International, Inc.,* 566 F.Supp. 289, 290–91 (S.D.N.Y.1983) (discussing *Murphy*'s explicit language that the obligation to act in good faith will not be implied to destroy the employer's right of termination). Accordingly no question of fact exists as to whether McKay was an "at will" or contract employee and defendants' summary judgment motion to dismiss the amended complaint's state law wrongful discharge and breach of contract claims is granted.

In sum, defendants' motion for summary judgment is granted as to the state law claims and denied as to her ERISA claim. Defendants' motion for sanctions under Federal Rule of Civil Procedure 11 is denied.

It is so ordered.