**Howard HARLAN, Plaintiff,**

**v.**

**SOHIO PETROLEUM COMPANY; Sohio Construction Company; the Standard Oil Company; Sohio Alaska Petroleum Company; and Dohio Oil Company, Defendants,**

**and related counterclaim and consolidated action.**

**Nos. C–85–9068–CAL, C–86–4072–CAL.**

United States District Court, N.D. California.

Entered Sept. 29, 1987.

Amended Jan. 13, 1988.

Decided Jan. 14, 1988.

---

William J. Flynn, Neyhart, Anderson, Nussbaum, Reilly & Fraitas, San Francisco, Cal., for plaintiff.

Ralph H. Baxter, Jr., Jeffrey D. Wohl, David S. Rosenbloom, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendants.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

LEGGE, District Judge.

Plaintiff Howard Harlan, a former manager at Sohio,[1] has sued Sohio on various causes of action arising from his termination and the benefits associated with the termination.

Harlan's complaint in C–85–9068 states claims as follows: (1) age discrimination in violation of 29 U.S.C. § 626(b); (2) breach of his employment contract; (3) wrongful discharge in violation of public policy; (4) breach of the implied covenant of good faith and fair dealing; (5) retaliation for filing an age discrimination charge; (6) three counts of breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.;* and (7) age discrimination in violation of Cal.Govt.Code. §§ 12940 *et seq.* Defendant Sohio counterclaimed for repayment of

---

**1.** Harlan was employed by both Sohio Construction Company and Sohio Petroleum Company, both of which are subsidiaries of Standard Oil. Also named as defendants are Sohio Alaska Petroleum Company and Sohio Oil Company. For purposes of this motion, the parties have stipulated that the various defendants are a joint employer, hereinafter referred to as "Sohio" in the singular.

a loan that was made to Harlan during his employment.

In action C–86–4072, Sohio appeals the decision of a state administrative law judge, who imposed a penalty on Sohio for willfully withholding Harlan's last paycheck in violation of Cal. Labor Code § 203.

Plaintiff Harlan has moved for summary judgment on the ERISA issues, and Sohio has filed a counter-motion. Sohio has also filed a motion for judgment on the pleadings, and/or for summary judgment, on various state law claims. These motions were heard and were submitted for decision. The court has considered the moving and opposing papers, the record and the applicable authorities and rules as set out below.

## I.

### FACTUAL BACKGROUND

The following facts are undisputed in the record of these motions:

Harlan had been employed by Bechtel for 21 years. Sohio recruited and hired him in 1981. Harlan alleges that Sohio made certain assurances about the nature and stability of his employment during the employment discussions. Harlan accepted the position and relocated from Texas to the Bay Area. After four years of employment, Harlan was notified in August 1985 that he would be terminated as part of a large reduction-in-force effective September 30, 1985.

When Harlan was notified of his impending termination, he communicated with Sohio about various benefits that would be available to him. Sohio was implementing a plan of benefits for the employees who were involuntarily terminated, called an Involuntary Separation Plan or "ISP." Under the ISP, Harlan would have been eligible for certain benefits, including (1) severance pay, (2) forgiveness of a Critical Skills Loan (CSL) he had obtained from Sohio, and (3) a lump-sum payment under Sohio's Mortgage Interest Differential Allowance (MIDA) program.

In the weeks before plaintiff's termination, defendant informed him that he was eligible for the ISP benefits only if he signed a form Separation Agreement (the agreement). The agreement contained a clause by which the terminated employee released any claims that he might have against Sohio. Because Harlan believed he had been discriminated against on the basis of age, he did not want to release his claims. When Sohio learned that Harlan had already filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC), Harlan was told he could not sign the agreement as the EEOC charge was inconsistent with the release. Consequently, Harlan received no ISP benefits, which he challenges as a violation of ERISA.

Harlan also alleges that Sohio retaliated against him by adverse employment actions after he filed his EEOC charges. After exhausting his remedies before the EEOC and the California Department of Fair Employment and Housing, Harlan filed this suit, No. C–85–9068–CAL. Sohio has counterclaimed for the unpaid balance of Harlan's CSL loan.

On his last day of work, Harlan was informed that his last paycheck would be electronically deposited into his bank account. In fact, the check was not directly deposited but was sent manually to Sohio's San Francisco office. A Sohio employee in San Francisco for some reason returned the check to Sohio headquarters rather than sending it to Harlan. Sohio did not send Harlan his last paycheck until after he had filed a wage claim with the California Labor Commissioner. A state Administrative Law Judge concluded that Sohio had willfully withheld Harlan's last paycheck and imposed an $11,769.30 penalty on Sohio. Sohio appealed to the California Municipal Court and then removed the appeal to this court. The appeal, C–86–4072–CAL, was consolidated with C–85–9068–CAL.

## II.

### ERISA ISSUES

Plaintiff's Sixth, Seventh and Eighth causes of action allege that defendant breached duties under ERISA by denying

plaintiff benefits under the ISP program. Although the alleged breach of duty is the same, each cause of action seeks recovery of a separate alleged ISP benefit: severance pay (Sixth), MIDA lump-sum payment (Seventh) and CSL forgiveness (Eighth).

Plaintiff makes two alternative arguments for summary judgment on the three ERISA claims. (1) Harlan argues that Sohio breached its fiduciary duty by denying him ISP benefits based on a condition, *i.e.* his refusal to sign the release, that was not part of the ERISA plan. Alternatively, (2) if the release condition was part of the ISP, that condition could not lawfully be included in an ERISA plan.

Sohio's countermotion seeks summary adjudication that the release condition was contained in the ISP plan and that such a condition is lawful. Additionally, Sohio has made several other motions on ERISA issues. Sohio moves for dismissal of the Seventh and Eight claims on the grounds that neither the MIDA nor the CSL programs were ERISA plans. Sohio also argues that ERISA preempts plaintiff's Second, Third and Fourth causes of action. Sohio further asks that plaintiff's claim for punitive damages on the ERISA claims be stricken, and that plaintiff's demand for a jury trial on ERISA issues be stricken. The court will address each of these motions below.

### A.

■ Sohio's ISP is an employee welfare benefit plan within the scope of ERISA.[2] 29 U.S.C. § 1002(1)(A); *Jung v. FMC Corp.*, 755 F.2d 708, 710 n. 2 (9th Cir.1985). Sohio as the plan administrator is required to administer the plan in accordance with the reporting and disclosure requirements and the standards of fiduciary responsibility of the Act. 29 U.S.C. §§ 1021–31; 1101–14. This court reviews the fiduciary's actions under an "arbitrary and capricious" standard. *Jung*, 755 F.2d at 711; *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518, 1520–21 (11th Cir.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985); *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301, 1304 (9th Cir.1983).

An administrator breaches its fiduciary duties if it fails to administer a plan in accordance with the plan's language. 29 U.S.C. § 1104(a)(1)(D); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1354 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). A fiduciary is also obligated to administer the plan "for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A).

### B.

■ Plaintiff contends that Sohio breached its fiduciary duty by denying him ISP benefits for a reason not contained in the plan itself; that is, the release. The Ninth Circuit has held that a fiduciary's imposition of conditions not contained in the plan's language is arbitrary and capricious and thus a violation of ERISA. *Blau*, 748 F.2d at 1356; *accord Dennard v. Richards Group, Inc.*, 681 F.2d 306, 318 (5th Cir.1982); *Morgan v. Mullins*, 643 F.2d 1320, 1321 (8th Cir.1981). If the release was not in fact a part of the plan, Sohio breached its fiduciary duty by denying Harlan benefits because he would not sign the release.

It is undisputed that the summary of the ISP[3] which Harlan received before he was

---

**2.** Sohio does not dispute in these motions that the ISP is an ERISA plan. In its answer to the first amended complaint, Sohio denied the allegation that the ISP was an ERISA plan. The pertinent allegations, contained in paragraphs 31, 41, and 51 of the First Amended Complaint, are apparently partially true and partially false. Because Sohio answered by denying those allegations in their entirety, rather than admitting that the ISP was an ERISA plan and denying the disputed parts of the allegations, plaintiff has requested that defendant be sanctioned under Fed.R.Civ.P. 11. *See* Fed.R.Civ.P. 8(b) (in answering a complaint a defendant should specify which allegations are true and deny remaining allegations). As the court concludes that Sohio's answer was sufficiently "grounded in fact" to comply with the dictates of Rule 11, the request for sanctions is denied.

**3.** The summary that Harlan received in September 1985 was not the formal "summary plan description" required by 29 U.S.C. § 1022 and by 29 C.F.R. § 2520.101 *et seq.* Apparently,

terminated did not contain a release clause, nor any mention that a release was a condition of eligibility. Under the "Eligibility" section, the summary stated:

> Regular full time employees who, due to the closure of Sohio's San Francisco offices, are not offered a position of, at least, comparable grade or salary at another Sohio location.

However, the Separation Agreement was given to Harlan at the same time as the other ISP documents. That agreement did contain the paragraph releasing all claims against the company.[4] The agreement, although not identifying the ISP by name, referred to the benefits contained in the plan and expressly conditioned receipt of those benefits on signature of the release provision.

This is not a situation where the plan had already been in effect, and defendant later sought to condition the benefits on a later-required release. Here the benefits and the condition were offered to plaintiff at the same time. By declarations filed with this motion, Sohio officials also stated that the release condition was always part of the plan, and that the clause was consistently applied so that no one received benefits without signing the release. Those declarations were substantially undenied.

The court concludes that all of the documents delivered to plaintiff constituted the "plan." That "plan" included the con-

dition that plaintiff release defendant as a condition to receiving the benefits. Plaintiff cannot accept the benefits and at the same time say that the condition was not part of it.

### C.

■ Harlan contends that inclusion of the release condition was illegal under 29 U.S.C. §§ 1104(a)(1)(A) and 1110(a). He maintains that it violates Section 1104(a)(1)(A)[5] because that condition was not "for the exclusive purpose of providing benefits to participants and their beneficiaries." Harlan also argues that it is unenforceable under Section 1110(a),[6] which prohibits exculpatory provisions in ERISA plans. As a plan fiduciary, Sohio is of course bound by the duties imposed those sections.

Plaintiff's argument under section 1104(a)(1)(A), however, cannot apply to the *creation* of a plan. ERISA does not require employers to establish employee benefit plans. *Adams v. General Tire & Rubber Co.*, 794 F.2d 164, 166 (4th Cir.1986) ("[A]n employer has no obligation under ERISA or any other federal law to provide supplemental unemployment compensation or any other type of benefits to his employees.") Nor does ERISA dictate any substantive eligibility requirements that the employer must adopt if he chooses to establish a plan. *See, e.g., Blau*, 748 F.2d at 1353 (explaining that "ERISA mandates no

---

Sohio created the ISP in conjunction with its reduction-in-force and only later realized that the ISP should be governed by ERISA requirements. A formal summary plan description was prepared in 1986.

4. The relevant paragraphs state:

3. In exchange for the benefits described in Paragraph 2, I release and discharge SPC and its officers, directors, stockholders, employees, agents, subsidiaries, parents, and affiliates from any and all claims, demands, or liabilities whatsoever, which I ever had or may now have against any of them, including but not limited to, any claims, demands, or liabilities in connection with my employment. [¶] I understand and expressly agree that this termination agreement extends to all claims of every nature and kind whatsoever, known and unknown, suspected or unsuspected, past or present, which existed at the time of the execution of this Separation Agreement. [¶] As required by California

law I am advised that Section 1542 of the California Civil Code reads as follows: [text of statute omitted] [¶] All my rights under Section 1542 of the California Civil Code are expressly waived.

5. 29 U.S.C. § 1104(a)(1) provides in relevant part:

... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; ....

6. 29 U.S.C. § 1110(a) provides in part:

... any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.

minimum substantive content").[7] Once an ERISA plan is created, the courts may not examine the reasonableness of provisions contained in the plan. *United Mine Workers v. Helen Mining Co.,* 762 F.2d 1155, 1160 (3rd Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985).

ERISA provides for certain procedural protections regarding the plan *after* the plan and its eligibility requirements are created. *See Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 374–75, 100 S.Ct. 1723, 1732–33, 64 L.Ed.2d 354 (1980) (congressional purpose in enacting ERISA was to make sure employee who had fulfilled necessary conditions to obtain benefit would actually receive it); *Adams,* 794 F.2d at 167 (distinguishing employer's distinct responsibilities in creation *vs.* administration of ERISA plan).

In this case, Sohio created and offered the ISP for certain employees who were terminated. Sohio was not obligated to provide the ISP at all. And Sohio chose to make the release clause a requirement for receipt of ISP benefits. Only after Sohio established the plan, including the release condition, does Section 1104(a)(1)(A) govern the manner in which Sohio must administer the plan.

There is no contrary authority supporting plaintiff's argument that Section 1104(a)(1)(A) prevents Sohio from including the release condition as an eligibility requirement at the time the plan was created.[8]

■ Harlan also argues that the release condition is an exculpatory provision made unenforceable by 29 U.S.C. § 1110(a). Section 1110(a) prohibits waivers of future liability arising out of administration of the ERISA plan. The release clause in this case releases "past or present" claims. It does not require an employee to waive future claims regarding plan administration and does not violate the section.

The court concludes that the release condition was a part of the plan, and that the inclusion of such a condition does not violate ERISA. Partial summary judgment is therefore granted for defendant on these issues.

**D.**

Plaintiff's Seventh and Eighth Causes of Action relate to Sohio's MIDA and CSL programs. The parties agree that neither the MIDA nor the CSL programs are ERISA plans. Plaintiff would have been entitled to receive a lump-sum payment for future MIDA benefits and forgiveness of his CSL loan balance under the ISP if he had accepted it. Since plaintiff did not accept those benefits because he did not want to sign the release—a condition which the court has above found proper under ERISA—he has no cause of action to recover them.

**E.**

■ Sohio argues that plaintiff's common law causes of actions—breach of contract (Second), wrongful discharge (Third) and breach of the implied covenant of good faith and fair dealing (Fourth)—are preempted by ERISA.

ERISA's express preemption provision, Section 514(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The U.S. Supreme Court has given the phrase "relate to" a "broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal

---

**7.** In the present case, unlike *Blau,* plaintiff does not argue that Sohio has committed procedural violations so severe as to warrant this court's examination of the plan's substantive provisions. Plaintiff's argument assumes that the waiver clause was contained in the ISP and does not suggest that Sohio failed to disclose the condition or kept its interpretations of the plan secret as did the employer in *Blau.*

**8.** Harlan relies upon *Frary v. Shorr Paper Products, Inc.,* 494 F.Supp. 565, 569 (N.D.Ill.1980), in which an employer's policy of "punishing" certain employees by refusing to pay certain profit sharing benefits was held to violate Section 1104 because the policy was not in the best interests of plan participants. *Frary* is distinguishable because the employer there administered the plan according to a condition that was *not* contained in the plan itself.

sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co. v. Dedeaux,* — U.S. ——, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987), quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

In addition, the Ninth Circuit has held that ERISA preemption extends even to state common-law causes of action that "do not explicitly refer to employee benefit plans." *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir.1985). Thus, many courts have found preemption where the plaintiff's claims, although formed under theories of state common-law, were really ways of restating claims for employee benefits governed by ERISA. *See, e.g., Dedeaux,* 107 S.Ct. at 1551–58 (plaintiff's common-law causes of action alleging improper processing of claim for disability benefits preempted by ERISA); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1356–57 (9th Cir.1985) (plaintiffs' common-law causes of action alleging denial of benefits under severance allowance policy preempted by ERISA), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

Nevertheless, the Ninth Circuit has also recognized that "while the scope of section 514(a) is broad, it is not all-encompassing." *Martori Bros. Distrib. v. James–Massengale,* 781 F.2d 1349, 1356 (9th Cir.) *opinion amended,* 791 F.2d 799, *cert. denied,* — U.S. ——, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986). In *Martori,* employers violated the Agricultural Labor Relations Act by refusing to bargain in good faith. As a remedy, the Board ordered employers to pay their employees a compensation differential which included wages and fringe benefits. The employers argued that the make-whole order related to ERISA plans the employers already had. The court rejected the preemption argument, stating:

"Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." ...

"[W]e ... presume that [in enacting ERISA] Congress did not intend to preempt areas of traditional state regulation."

*Id.* at 1356, quoting *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, and *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed. 2d 728 (1985).

The *Martori* court set forth the following four categories of state laws that have been found to relate to ERISA plans for purposes of preemption:

First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.

*Id.* at 1357 (footnotes omitted). The court then concluded:

The principle underlying all of these decisions would appear to be that the state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is "part of the administration of an employee benefit plan"; that is, the state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefit plans.

*Id.* at 1357–1358, quoting *Scott,* 754 F.2d at 1505.

Applying the standard set forth in *Martori* to this case, plaintiff's state law claims are preempted only if they concern matters regulated by ERISA. In determining that they do not, this court relies on the recent Ninth Circuit case *Sorosky v. Burroughs Corp.,* 826 F.2d 794 (9th Cir.1987).

In *Sorosky,* plaintiff challenged his layoff and subsequent termination on the ground that he had been fired because of his age. He pleaded causes of action for breach of contract/wrongful discharge, misrepresentation, breach of the implied covenant of good faith and fair dealing,

conspiracy to interfere with a protected property interest, and discrimination based on age. Defendant removed the suit to the district court, which ultimately granted summary judgment in defendant's favor. In affirming, reversing and remanding in part, the Ninth Circuit court analyzed plaintiff's claims as follows:

> [Sorosky's] first claim for "breach of contract/wrongful discharge" actually includes several different theories. Certain of the allegations frame a theory relating to Burrough's employee benefit plan. In substance, Sorosky alleges that Burroughs agreed in writing to provide him with monthly retirement benefits and then sought to prevent him from acquiring those benefits. *To the extent that this first claim refers to the employee benefit plan, it is preempted. Sorosky also alleges breach of contract or wrongful discharge on theories that have no relationship to the benefit plan —for example, discharge without good cause. This first claim is not preempted to the extent it relies on theories independent of the benefit plan* (emphasis added).

*Id.* at 3165.

Similarly, plaintiff here alleges breach of contract, wrongful discharge, and breach of the implied covenant of good faith and fair dealing based on his termination. These claims include allegations separate from his allegations that he has been wrongfully denied employee benefits. These claims are therefore are not preempted by ERISA. Defendant's motion in that regard is denied.

### F.

Defendant has moved to strike plaintiff's claim for punitive damages under ERISA, arguing that such damages are not available under the statute. Since this court is dismissing the ERISA causes of action, the request for punitive damages under those counts is also stricken. This is not a ruling on plaintiff's alleged right to punitive damages on the non-ERISA counts. And the court need not rule on defendant's motion to strike the jury demand on the ERISA counts.

### III.

### ISSUES REGARDING STATE LAW CLAIMS

#### A. *Breach of Employment Contract*

■ Defendant has moved for summary judgment on plaintiff's Second Claim, for breach of an alleged employment contract. A discharged employee may state a cause of action for a discharge which is contrary to the express or implied terms of the employment contract. *Koehrer v. Superior Court,* 181 Cal.App.3d 1155, 1166, 226 Cal.Rptr. 820, 826 (1986); *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 322, 171 Cal.Rptr. 917, 922 (1981). Under the *Pugh* analysis, it is necessary to consider whether the express or implied terms of an employment agreement rebut the presumption of "at will" status and show a promise to terminate the employee only for good cause. 116 Cal.App.3d at 325–330, 171 Cal. Rptr. at 924–928; *Shapiro v. Wells Fargo Realty Advisors,* 152 Cal.App.3d 467, 481, 199 Cal.Rptr. 613, 621 (1984).

> The *Pugh* court explained that
> "when construing contracts involving employment rights, courts should avoid mechanical and arbitrary tests if at all possible; employment contracts, like other agreements, should be construed to give effect to the intention of the parties as demonstrated by the language used, the purpose to be accomplished and the circumstances under which the agreement was made."

116 Cal.App.3d at 326, 171 Cal.Rptr. 917, quoting *Drzewiecki v. H & R Block, Inc.,* 24 Cal.App.3d 695, 703, 101 Cal.Rptr. 169, 174 (1972). Thus, an implied promise not to terminate except for good cause may be based on a variety of factors such as an "express or implied promise based on the employer's words, conduct, custom or a combination thereof." *Koehrer,* 181 Cal. App.3d at 1166, 226 Cal.Rptr. at 826; *Pugh,* 116 Cal.App.3d at 327, 171 Cal.Rptr. at 925–26 (proper to consider factors such as "the personnel policies or practices of

the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged").

The court has reviewed the record and concludes that plaintiff's proffered evidence is sufficient to raise a genuine issue of material fact regarding rebuttal of the presumption of at-will employment, and to allow a jury to imply a promise not to terminate except for good cause.

■ Defendant's arguments to the contrary address the factors identified by *Pugh* individually, rather than considering the totality of the employment relationship. *Pugh,* 116 Cal.App.3d at 326, 171 Cal.Rptr. at 925. For example, Sohio places great reliance on the fact that plaintiff's length of service was inadequate to enable him to state a claim for breach of implied contract. While longevity is *a* factor to be considered, *see, e.g., Newfield v. Insurance Co. of the West,* 156 Cal.App.3d 440, 445, 203 Cal.Rptr. 9, 12 (1984), there is no *per se* rule barring short-term employees for recovery for breach of an implied contract. *Khanna v. Microdata Corp.,* 170 Cal. App.3d 250, 262–63, 215 Cal.Rptr. 860, 867–68 (1985). Sohio also argues that Harlan may not rely on employment policies as a basis for implied term employment if he was unaware of those policies. *See Hillsman v. Sutter Community Hosp.,* 153 Cal. App.3d 743, 753, 200 Cal.Rptr. 605, 611 (1984) (policies "may form part of an implied contract of employment if the employer and employee had a mutual understanding that the rules or procedures would apply to the employee"); *Hepp v. Lockheed–California Co.,* 86 Cal.App.3d 714, 719, 150 Cal.Rptr. 408, 411 (1978). The court does not believe that defendant's argument can result in a finding of no contract as a matter of law. *See, e.g., Pugh,* 116 Cal.App.3d at 329, 171 Cal.Rptr. at 927. Rather, the effect of Harlan's alleged lack of awareness is simply one factor for the trier of fact to consider.

For the foregoing reasons, the motion for summary judgment as to the Second claim is denied.

## B. *Breach of Implied Covenant*

Harlan also alleges that Sohio breached an implied covenant of good faith and fair dealing by terminating him, the fourth cause of action. An action for breach of such an implied covenant will lie where an employer asserts that there is good cause for discharging an employee "without a good faith belief that good cause for discharge in fact exists." *Koehrer,* 181 Cal. App.3d at 1171, 226 Cal.Rptr. 820, 829. Under those circumstances, "the employer has tortiously attempted to deprive the employee of the benefits of the agreement." *Id.; see Khanna v. Microdata Corp.,* 170 Cal.App.3d at 262–63, 215 Cal.Rptr. at 867, (breach of implied covenant established by "bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the [employee's] enjoyment of contract rights," quoting *Shapiro v. Wells Fargo Realty Advisors,* 152 Cal.App.3d 467, 478–79, 199 Cal.Rptr. 613, 619 (1984)).

■ It is undisputed that plaintiff was terminated as part of a reduction-in-force (RIF). Sohio argues that a RIF is good cause *per se,* entitling it to summary judgment as a matter of law. However, defendant's cited authorities do not go that far. *See Gianaculas v. Trans World Airlines, Inc.,* 761 F.2d 1391 (9th Cir.1985); *Cox v. Resilient Flooring Div. of Congoleum Corp.,* 638 F.Supp. 726 (C.D.Cal.1986); *Malmstrom v. Kaiser Alum. & Chem. Corp.,* 187 Cal.App.3d 299, 231 Cal.Rptr. 820 (1986); *Clutterham v. Coachmen Industries, Inc.,* 169 Cal.App.3d 1223, 215 Cal.Rptr. 795 (1985). This court does not believe that those authorities establish a *per se* rule that a RIF constitutes good cause. Rather, in each of the cases, summary judgment was granted because the RIF at issue was held to constitute good cause in that particular case.

Sohio's evidence of the RIF does satisfy its burden of coming forward with evidence of a legitimate reason of good cause for Harlan's termination. *Clutterham,* 169 Cal.App.3d at 1227, 215 Cal.Rptr. 795; *Cro-*

*sier v. United Parcel Service, Inc.,* 150 Cal.App.3d 1132, 1137–38, 198 Cal.Rptr. 361 (1983). To succeed on his bad faith claim, Harlan must show that the RIF argument is pretextual. *Clutterham,* 169 Cal.App.3d at 1227, 215 Cal.Rptr. 795; *Crosier,* 150 Cal.App.3d at 1138, 198 Cal.Rptr. 361. Plaintiff's proffered evidence is sufficient to raise a genuine issue of material fact that the RIF was pretextual, or that the manner in which the RIF was applied to him breached the implied covenant.

Defendant's motion for summary judgment on the Fourth Claim is therefore denied.

### C. *FEHA Preemption*

 Defendant moves for judgment on the pleadings, Fed.R.Civ.P. 12(c), or, in the alternative, for summary judgment on the ground that plaintiff's Second, Third and Fourth causes of action are preempted by the California Fair Employment and Housing Act (CFEHA), Cal.Govt.Code §§ 12940 *et seq.* Plaintiff concedes that his third claim for discharge in violation of public policy is preempted, but disputes defendant's motion as to the Second and Fourth claims.

The CFEHA mandates equal employment opportunity, declaring that it is the public policy of the state to "protect and safeguard the right and opportunity of all persons to seek, obtain and hold" employment without discrimination, including discrimination on the basis of age. Cal.Govt. Code § 12920. The CFEHA preempts any common law causes of action for age discrimination. *Strauss v. A.L. Randall Co.,* 144 Cal.App.3d 514, 518–20, 194 Cal.Rptr. 520, 523–24 (1983). Common law claims are preempted only to the extent that they are based on discrimination within the purview of the Act. *Hudson v. Moore Business Forms, Inc.,* 609 F.Supp. 467, 474–75 (N.D.Cal.1985). The Act does not preempt

common law claims which are not based on discrimination. *Id.*

In this case, Harlan's Second claim (breach of contract) and Fourth claim (breach of implied covenant) are not based solely on age discrimination. First Amended Complaint, ¶¶ 11–15, 19–22. Although these claims are based "in part" on age discrimination, plaintiff alleges other conduct which could constitute a breach of contract or a breach of the implied covenant. And plaintiff's proffered evidence shows that Sohio could have breached the employment contract or the implied covenant for reasons unrelated to age discrimination.

Accordingly, the motions for judgment on the pleadings and for summary judgment on the Second and Fourth claims are denied. The motion for judgment on the pleadings as to the Third claim is granted.

### IV.

### RETALIATION CLAIM

 Defendant moves for summary judgment on the Fifth claim, which alleges that certain adverse employment actions were taken in retaliation for plaintiff's filing an EEOC charge.[9] Defendant contends that it is entitled to summary judgment because Harlan has suffered no compensable damages as a result of the allegedly retaliatory actions.[10]

Sohio's argument is based on a narrow reading of the complaint; that is, that Harlan only claims that he lost ISP benefits and that his last paycheck was delayed as a result of the alleged retaliation. The Fifth claim does allege that Sohio retaliated against Harlan by denying him the benefits of the severance package and withholding his last paycheck. First Amended Complaint, ¶ 25. However, the complaint also

9. The Ninth claim, age discrimination under state law, also alleges retaliation as it incorporates the EEOC charge, attached as Exhibit B to the complaint. *See* First Amended Complaint, ¶ 61.

10. Defendant's moving papers indicate that the motion is based on the ground that Harlan suffered no damages from the retaliation. In its

reply papers, Sohio argues that it is entitled to summary judgment on the issue of liability. The court has reviewed the record and concludes that there is sufficient evidence to establish a genuine issue of material fact as to liability. *See Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731–32 (9th Cir.1986).

# 1032

makes reference to plaintiff's second EEOC charge, which states that plaintiff was denied various other benefits. *Id.,* ¶ 28 and Exh. B thereto. The Fifth claim appears to incorporate the EEOC charge and the broader damages allegedly caused by Sohio's retaliation.

In response to this motion, plaintiff has presented evidence of damages including the lost opportunity to be considered for other jobs at Sohio and a bonus for 1985. From this evidence, a jury could find that the retaliation caused him damage. Accordingly, the motion for summary judgment on the Fifth claim is denied.

## V.

### COUNTERCLAIM

Sohio has counterclaimed against plaintiff for the unpaid balance of the CSL loan. As there is no disputed issue of material fact as to the *amount* due on Harlan's CSL loan, defendant's motion for *partial* summary judgment is hereby granted. If defendant prevails on its counterclaim, it is entitled to recover $9,566.67.

## VI.

### LABOR COMMISSIONER APPEAL

 In action No. C–86–4072 defendant has appealed and removed to this court the decision of the California Labor Commissioner imposing penalties under Cal.Labor Code § 203 for Sohio's alleged failure to pay Harlan wages due him on his termination.

Defendant has moved for summary judgment, arguing that there is no issue of material fact that Sohio's failure to pay Harlan's wages on time was due to an administrative failure, rather than willfulness. In response to the motion, plaintiff relies on the fact that a Sohio employee in San Francisco sent the check back to Sohio's headquarters with the notation: "Not

entitled to above check, according to John Schilling, did not sign severance agreement." A jury could infer from this document, which is essentially the same evidence relied upon by the state Administrative Law Judge, that Sohio's conduct was willful under Section 203. Because of this disputed material fact, defendant's motion for summary judgment is denied.[11]

## VII.

For the reasons discussed above, IT IS ORDERED as follows:

1. Summary judgment is granted in favor of defendant as to the

(a) Third cause of action,

(b) Sixth cause of action,

(c) Seventh cause of action, and

(d) Eighth cause of action.

2. Plaintiff's claims for punitive damages on his ERISA causes of action are stricken.

3. If plaintiff is liable to defendant on defendant's counterclaim, the amount is $9,566.67, plus accrued interest.

4. The motions of plaintiff and defendant are otherwise denied.

5. This case is hereby referred to the Magistrates for purposes of convening a settlement conference.

IT IS SO ORDERED.

---

**11.** Both parties agree that the decision of the labor commissioner is reviewed *de novo* by this court. *Triad Data Serv., Inc. v. Jackson,* 153 Cal.App.3d Supp. 1, 5, 200 Cal.Rptr. 418, 420 (Cal.Super.1984). Although the court has found no authority on point, it is inclined to allow the jury to decide the issue of willfulness. If either party contends that this issue should be determined by the court, leave is hereby granted to raise that issue at the pretrial conference or by motion in limine.