Paul L. SPINK, Plaintiff–Appellant,

v.

LOCKHEED CORPORATION; Daniel M. Tellep; Robert A. Furman; Vincent N. Marafino; K.H. Anderson; L. Bernard; R.W. Berry; P.N. Braun–Agel; D.L. Bronco; R.H. Northcutt; W.E. Skowronski; A.G. Van Shaick; W.T. Vincent, Defendants–Appellees.

No. 92–56094.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1994.

Decided July 18, 1995.

Theresa M. Traber, Bert Voorhees, Traber & Voorhees, Pasadena, CA, for plaintiff-appellant.

Gordon E. Krischer, David E. Gordon, Paul Borden, O'Melveny & Myers, Los Angeles, CA, for defendants-appellees.

Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Paul Spink filed a complaint on behalf of himself and similarly situated individuals against Lockheed Corporation and certain individual defendants (collectively "Lockheed"). Spink alleged that Lockheed's retirement plan violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.,* and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* as amended by the Omnibus Budget Reconciliation Act of 1986 (OBRA 1986), Pub.L. No. 99–509, 100 Stat. 1874 (1986). The complaint also included individual claims based on ERISA and the federal common-law doctrine of equitable estoppel. The district court dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Spink appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

## I. Facts and Proceedings Below

Because we are reviewing a dismissal of Spink's complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), we accept as true all the following material allegations of the complaint. *See Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 472 (9th Cir.1994).

Spink worked for various subsidiaries and divisions of the Lockheed Corporation between 1939 and 1950. In May 1979, Spink again began working for Lockheed at the age of 61. At the time he was rehired, the terms of the Lockheed Corporation Retirement Plan for Certain Salaried Employees (Plan) lawfully excluded Spink from participating because he was over sixty years old. The Plan is a noncontributory defined benefit plan that covers substantially all salaried employees at Lockheed and certain subsidiaries.

Prior to rejoining Lockheed in 1979, Spink worked for Hughes Helicopters, where he expected to receive pension benefits if he continued to work through October 31, 1982. In an effort to recruit Spink from Hughes, Lockheed represented that if he accepted its offer of employment, Spink would participate in the Plan and would accrue credited service toward retirement benefits under the Plan during his subsequent employment with Lockheed. Lockheed personnel provided him with documents describing the benefits to which he would be entitled, and for the next four years sent him written year-end statements from the Plan notifying him of the amount of credited service he had accumulated as a Plan participant.

Lockheed notified Spink sometime in 1984 that he was not eligible to participate in the Plan because he was over sixty when hired.

In 1986, Congress passed OBRA 1986. OBRA 1986 amended ERISA, the ADEA, and the Internal Revenue Code (IRC), 26 U.S.C. §§ 1 *et seq.,* to bar age-based discrimination in participation and benefit accrual standards applied by employee benefit plans.

As a consequence of these amendments, for plan years beginning after January 1, 1988, the effective date of the amendments, Lockheed was required to allow employees hired after age sixty to participate in the Plan. Spink became a participant on December 25, 1988 (the first day of the Plan's 1988 plan year). In 1989, Lockheed informed him that it did not intend to credit him with accrued benefits based on his years of service with Lockheed prior to December 25, 1988. The Plan specifies that an employee who was previously excluded from the Plan would "not receive Credited Service for his pre-Member service[ ]" under the terms of the Plan. Plan § 2.01(C).

On May 8, 1990, Lockheed amended the Plan, establishing a "1990 Special Retirement Opportunity" (SRO) and a "1990 Voluntary Retirement Program" (VRP), which were available to certain employees until June 30, 1990 (collectively the "1990 Plan amendments"). These programs offered increased retirement benefits to eligible employees as an incentive to terminate their employment.

The increased benefits were paid out of the Plan's surplus assets. To partake in the increased pension benefits, Lockheed required employees to release virtually all potential employment-related claims they might have against Lockheed. Although he was eligible for the SRO option, Spink did not elect it because he did not wish to waive any ADEA and ERISA claims he may have against Lockheed. Spink retired in June 1990.

On February 5, 1992, Spink filed a five-count complaint against Lockheed. He brought all counts in his individual capacity, and also designated Counts I through III as a class action on behalf of all similarly situated employees. Counts I and II allege that the OBRA 1986 amendments to ERISA and ADEA entitle Spink and similarly situated employees to benefits under the Plan calculated on the basis of periods worked both before and after the effective date of the statute. Count III alleges that the 1990 Plan amendments constituted a breach of fiduciary duty and a prohibited transaction under ERISA. Count V alleges that because Spink relied on representations made by Lockheed, Lockheed is estopped from denying him benefits based on all of his employment since his rehire in 1979. Spink withdrew Count IV.

Lockheed moved to dismiss the complaint under Fed.R.Civ.Proc. 12(b)(6) for failure to state a claim upon which relief can be granted, and the district court granted Lockheed's motion and dismissed the complaint with prejudice. Spink timely appeals.

## II. Standard of Review

We review de novo a grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Carpenters Health & Welfare Trust Fund v. Tri Capital Corp.*, 25 F.3d 849, 852 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994). In addition, "[t]he interpretation of ERISA, a federal statute, is a question of law subject to de novo review." *Spain v. Aetna Life Ins. Co.*, 13 F.3d 310, 312 (9th Cir.1993).

## III. Age Discrimination Claims under ERISA and ADEA

■ We first consider whether the OBRA amendments to the ADEA and ERISA prohibit Lockheed from excluding Spink's and putative class members' pre–1988 years of service when calculating their accrued benefits. We conclude they do.

Prior to OBRA 1986, the ADEA and ERISA permitted an employer to deny participation in its pension plan to an employee who was over age sixty when hired if the plan's retirement age was sixty-five. *See* ERISA § 202(a)(2), 29 U.S.C. § 1052(a)(2) (1982 & Supp. V 1988); ADEA § 4(f)(2), 29 U.S.C. § 623(f)(2) (1982 & Supp. V 1988). Congress enacted OBRA 1986 to change this situation.

The overall objective of the OBRA amendments was to "prohibit arbitrary age discrimination in employment." ERISA § 2, 29 U.S.C. § 621 (1988). To that end, § 9202 of OBRA 1986 amended ERISA by adding:

[A] defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

29 U.S.C. § 1054(b)(1)(H)(i) (1988). Similarly, OBRA § 9201 amended the ADEA by providing:

[I]t shall be unlawful for an employer, an employment agency, a labor organization, or any combination thereof to establish or maintain an employee pension benefit plan which requires or permits—

(A) in the case of a defined benefit plan, the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age,

. . . .

ADEA § 4(i)(1), 29 U.S.C. § 623(i)(1) (1988 & Supp. V 1993). With regard to the effective date of these sections, OBRA 1986 provides:

The amendments made by sections 9201 and 9202 shall apply only with respect to plan years beginning on or after January 1, 1988, and only to employees who have 1 hour of service in any plan year to which such amendments apply.

Pub.L. No. 99–509, § 9204(a)(1); 100 Stat. 1979 (1986), *codified at* 29 U.S.C. § 623 note.

The parties agree that OBRA 1986 prohibits terminating or reducing the rate of benefit accrual because of the employee's age after January 1, 1988. They part ways over whether this prohibition requires that employers consider service years before the effective date of OBRA 1986 in calculating benefit accrual.

■ As with every question of statutory interpretation, we start with the language of the statute. The most natural reading of the text of OBRA 1986 §§ 9201 and 9202 compels us to conclude that pre-enactment service years must be included in benefit accrual calculation. OBRA prohibits age-based reduction in "the rate of benefit accrual." Denying credited service years that an employee would have accumulated but for prior age-based exclusion from the Plan results in a reduced rate of benefits for that employee. Therefore, denying credited service years that an older employee would otherwise have accumulated is unlawful under OBRA.[1]

In the context of this case, the Plan provides that "eligibility for benefits under the Plan and the amount of a Member's benefit are determined on the basis of service."

Plan § 4.01. An employee could participate in the Plan, and therefore accumulate credited service years, "upon being employed in a Covered Group" unless—prior to OBRA's effective date—the employee commenced employment when he or she was sixty years of age or older. Plan § 2.01(B) & (C). Because Spink began work in a Covered Group after he had celebrated his sixtieth birthday, he did not become a Member of the Plan when he began work. Had he not been excluded because of his age, he would have begun to accumulate credited service years when he started working in a Covered Group and all those years would be used to calculate the amount of his benefits. Put another way, Spink's credited service was calculated as lower than that of a younger employee's because he was denied credit for all years of his employment in a Covered Group.[2]

Such an age-based reduction in the rate of accrual is the essence of OBRA's express prohibitions. The fact that the reduction would be accomplished indirectly, through reducing the number of credited service years, rather than directly by reducing the rate itself, is of no consequence.

■ Lockheed would have us focus on the cause of the disparity: the previously lawful

1. Spink and Amicus, the American Association of Retired Persons, argue that including in benefit accrual any service years before OBRA 1986's effective date would not be a retroactive application of the amendments. Rather, they contend, this interpretation would merely apply the current law, prohibiting reduction of benefits based on age, to the operative formula. *See Puckett v. United Air Lines, Inc.,* 705 F.Supp. 422, 424 (N.D.Ill.1989). We disagree.

To the extent our interpretation requires employers to include pre-enactment service years in calculating accrued benefits, it applies retroactively. Retroactivity depends on whether the new provision attaches new legal consequences to events completed before its enactment. *Landgraf v. USI Film Prods.,* —— U.S. ——, —— & n. 23, 114 S.Ct. 1483, 1499 & n. 23, 128 L.Ed.2d 229 (1994). "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at ——, 114 S.Ct. at 1499. In light of the fact that OBRA 1986 prohibits a previously legal basis for discriminating in pension plans, and in consideration of the increase in pension obligations that

will result from inclusion of pre-enactment service years, we acknowledge that OBRA 1986 operates retroactively *in this context.* However, this observation does not affect our conclusion because our analysis is based on retroactive intent of the statute manifested in its text. *See id.* at ——, 114 S.Ct. at 1492; *see also* H.R.Rep. No. 99–1012, 99th Cong., 2d Sess. 379 (1986), *reprinted in* 1986 U.S.C.C.A.N. 4024 ("The conferees recognize that repeal of [law that permits age-based exclusion from plans] may have the effect of increasing an employer's minimum funding requirements significantly from employees hired within five years of normal retirement age.").

2. We acknowledge that our holding requiring that employees receive credit for years they were not Plan participants is contrary to Plan § 2.01(C). Section 2.01(C) of the Plan provides that "[a]n Employee who was excluded from the Plan under Section 2.01 as in effect prior to December 25, 1988 shall become a Member on December 25, 1988 but shall not receive Credited Service for his pre-Member service." However, plan provisions are not controlling if they are inconsistent with the provisions of ERISA. *See* ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (1988 & Supp. V 1993).

exclusion of older employees from participation in the Plan. This argument raises the question of cause and effect. Since the cause of the disparity was lawful, Lockheed urges, the disparate result must therefore be lawful. However, OBRA 1986 does not speak to causes. Rather, by invalidating age-based reductions in the Plan's benefit accrual, OBRA 1986 forbids the discriminatory effects of the Plan. Lockheed cannot avoid the prohibition against age-based reductions in benefits by pointing to previously lawful causes of those reductions. *See* 29 U.S.C. § 1001(b); *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1468 (9th Cir.1995) (remedial purpose of ERISA requires broad reading).

■ Congress explicitly excepted some nondiscriminatory causes from its prohibition against disparities in benefit accrual. For example, ERISA § 204(b)(1)(H)(ii), 29 U.S.C. § 1054(b)(1)(H)(ii) (1988), provides:

> A plan shall not be treated as failing to meet the requirements of this subparagraph because the plan imposes (without regard to age) a limitation on the amount of benefits that the plan provides or a limitation on the number of years of service or years of participation which are taken into account for purposes of determining benefit accrual under the plan.

Under this provision, differences in accrual caused by a plan's service cap or early retirement provisions are permissible, even though they may result in disparities. *See Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1200–01 (8th Cir.1992). When Congress enumerates an exception or exceptions to a rule, we can infer that no other exceptions apply. *Koniag v. Koncor Forest Resource*, 39 F.3d 991, 998 (9th Cir.1994); *Horner v. Andrzjew,* 811 F.2d 571, 574–75 (Fed.Cir.), *cert. denied,* 484 U.S. 912, 108 S.Ct. 257, 98 L.Ed.2d 215 (1987); 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 47.23 (5th Ed.1992). Therefore, Congress' express exception of some nondiscriminatory causes of disparities in benefit accrual indicates that other discriminatory causes—such as Lockheed's previously lawful exclusion of Spink from participation—are not permissible.

■ Research into the legislative history also verifies our reading of the language of the OBRA 1986 amendments. An earlier version of OBRA 1986 adopted a Senate amendment that specifically provided that OBRA 1986 would apply only to individuals employed after December 31, 1988 and only to accrual computation periods beginning after December 31, 1986. H.R.Rep. No. 99–1012, 99th Cong., 2d Sess. 377 (1986), *reprinted in* 1986 U.S.C.C.A.N. 4022, *and* 132 Cong.Rec. 25,044 (1986). Under this provision, pre–1986 employment was clearly excluded. However, Congress rejected this proposal in conference, *see* H.R.Rep. No. 99–1012, 99th Cong., 2d Sess. 378 (1986), *reprinted in* 1986 U.S.C.C.A.N. 4023, and instead adopted a provision that would apply to all employees "who have one hour of service in any plan year to which the amendments apply." OBRA § 9204(a)(1). Congress knew the appropriate and specific language necessary to exclude pre–1988 service and chose not to include it. *See Arizona Elec. Power Co-op. v. United States,* 816 F.2d 1366, 1375 (9th Cir.1987). When Congress includes limiting language in an earlier version of a bill, but deletes it prior to enactment, we presume that the limitation was not intended. *See Russello v. United States,* 464 U.S. 16, 23–24, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983).

Finally, we note that other provisions of OBRA 1986 demonstrate that Congress was well aware of how to limit application of the amendment to post-enactment service years. Section 9204(b) provides that "amendments made by section 9203 [amending 29 U.S.C. §§ 1002(24)(B) & 1052(a)(2) and 26 U.S.C. §§ 410(a)(2) & 411(a)(8) ] shall apply only with respect to plan years beginning on or after January 1, 1988, and *only with respect to service performed on or after such date.*" (Emphasis added). Since Congress chose not to include such a limitation in OBRA § 9204(a), the provision governing the effective date of §§ 9201 and 9202, we can infer that Congress did not intend that limitation to apply to those sections. *See Russello,* 464 U.S. at 23, 104 S.Ct. at 300–01.

Lockheed contends that § 9204(b) compels the opposite result. To reach this conclusion,

Lockheed points to the fact that § 9204(b) amends ERISA § 202, 29 U.S.C. § 1052, which contains minimum participation standards. Lockheed starts with the observation that ERISA §§ 204(b)(1) and (b)(4)(A) provide that benefit accrual is based on years of participation. From there, Lockheed reasons that by limiting the retroactivity of participation requirements through § 9204(b), Congress indirectly limited the benefit accrual calculation to years after OBRA 1986's effective date. If § 9204(b) were the only statement about the effective date of OBRA 1986, Lockheed's reasoning might be persuasive. However, § 9204(b) is directly preceded by § 9204(a)(1), which explicitly pertains to the amendments made by the OBRA provisions at issue, §§ 9201 and 9202.

The first clauses of §§ 9204(a)(1) and 9204(b) are virtually identical. Both state that the amendments they govern shall apply "only with respect to plan years beginning on or after January 1, 1988, . . . ." However, the latter portion of § 9204(b) includes the further limitation that the amendments made by § 9203 apply "only with respect to service performed on or after such date." By contrast, § 9204(a)(1) concludes that §§ 9201 and 9202 apply "only to employees who have 1 hour of service in any plan year to which such amendments apply." We cannot comprehend any logical reason why Congress would not include a limitation in the immediately preceding subsection, which would *di-*

*rectly* limit the application of benefit accrual standards, but instead include a temporal limitation in § 9204(b), thereby *indirectly* limiting the application of benefit accrual standards. *See Russello,* 464 U.S. at 23, 104 S.Ct. at 300–01 (declining to find that differing language in two subsections has the same meaning).

■ All aspects of OBRA 1986's language, structure, and legislative history indicate Congress' intention that pre-enactment service years be included in calculating benefit accrual for older employees.[3] Lockheed withheld Spink's service years from 1979 to December 25, 1988. Therefore, Spink has stated a claim for violation of OBRA 1986 upon which relief can be granted.[4]

## IV. The 1990 Plan Amendments

Next we turn to Lockheed's amendment of the Plan to allow "purchases" of releases of potential claims. Spink contends that Lockheed violated ERISA when it adopted the 1990 Plan amendments, which required employees to execute a release of all potential claims before they could elect the SRO or VRP options and receive enhanced benefits. He contends that this arrangement involved the use of existing plan assets to benefit Lockheed and constituted a prohibited transaction with a party in interest, a *per se*

---

3. Both parties have implored us to apply the IRS's proposed regulations interpreting OBRA. Spink seeks to have us follow the reasoning of *Puckett,* 705 F.Supp. at 423, which relied on the IRS's proposed regulations to find that OBRA requires that pre–1988 service be included in benefit accrual. In reaching its decision, the *Puckett* court relied on the language in the regulations that states, "[F]or a participant who has at least 1 hour of service for the plan sponsor in a plan year beginning in 1988 or thereafter, a defined benefit plan may not disregard any years of service, including years of service before 1988, because of age in determining the participant's plan benefit." Prop.Treas.Reg. 1.411(b)–2(f)(1)(ii), 26 C.F.R. Part 1, 53 Fed.Reg. 11876, 11884 (April 11, 1988).

Lockheed would instead have us rely on other language in the proposed regulations, "However, a defined benefit plan is not required under section 411(b)(1)(H) and paragraph (b) of this section to take into account for benefit accrual

purposes any year of service completed before an employee becomes a participant in the plan . . ." *id.,* and other provisions that suggest pre–1988 service should not be credited to employees in Spink's position. *See* 26 C.F.R. Part 1, 53 Fed. Reg. 11877.

We decline to apply either of these interpretations. Although the IRS has announced its intention to adopt final regulations that are essentially consistent with these proposed regulations, *see* I.R.S. Notice 88–126; 54 Fed.Reg. 604–01, it has not yet done so, and we need not accord deference to its proposed interpretations. *See Oakley v. City of Longmont,* 890 F.2d 1128, 1133 (10th Cir.1989), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

4. In Count V of his complaint, Spink claims that the doctrine of equitable estoppel bars Lockheed from denying credit for his post–1979 service. Because we conclude that OBRA 1986 requires employers to credit preenactment service, we need not address the equitable estoppel claim.

violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) (1988).[5] We agree.

ERISA provides, in pertinent part:

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. . . .

ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). "Party in interest" is defined in ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C) (1988), to include "an employer any of whose employees are covered by such plan."

■ Undeniably Lockheed is a party in interest under 29 U.S.C. § 1002(14)(C). It is equally indisputable that a party in interest who benefitted from an impermissible transaction can be held liable under ERISA. *See, e.g.,* ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (1988); *Nieto v. Ecker,* 845 F.2d 868, 873–74 (9th Cir.1988) (stating that ERISA § 502(a)(3) gives plan participants the right to seek equitable relief against both the trustees who engaged in prohibited transaction and the party in interest who profited from it); *Kyle Rys. v. Pacific Admin. Servs.,* 990 F.2d 513, 516 (9th Cir.1993) ("Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), equitable relief for non-fiduciary liability is available only where a 'party in interest' has participated in prohibited transactions."). The only remaining question, then, is whether the 1990 Plan amendments were a transaction that directly or indirectly benefitted Lockheed.

Lockheed advances two arguments why we should answer this question in the negative. First, Lockheed suggests that by amending the Plan, it was merely imposing an eligibility requirement (signing a release of employment-related claims) on the SRP or VRP benefits. Employers have free rein under

ERISA, Lockheed proclaims, to impose eligibility requirements and amend plans. Alternatively, Lockheed argues that the releases it obtained as a result of the 1990 Plan amendments were not a "benefit" to Lockheed in violation of ERISA. We address these arguments in turn.

■ Relying on *Trenton v. Scott Paper Co.,* 832 F.2d 806, 809 (3d Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988), and *Harlan v. Sohio Petroleum Co.,* 677 F.Supp. 1021, 1026 (N.D.Cal.1988), Lockheed claims that it has the unfettered right to amend the Plan and to establish eligibility requirements. Indeed, this court has held that "[employers] remain free to unilaterally *amend* or *eliminate* [severance] plans, without considering the employees' interests." *Joanou v. Coca–Cola Co.,* 26 F.3d 96, 98 (9th Cir.1994) (emphasis supplied).

Lockheed misinterprets these statements, however, and overstates its freedom to amend. An employer's freedom to amend, while extensive, is not boundless. Lockheed is free to disregard employees' interests in amending the Plan, but it is not free to disregard the prohibitions of ERISA. "The substantive terms of ... employee benefit plans must comply with the detailed and comprehensive standards of ERISA." *United Mine Workers of Am. Health and Retirement Funds v. Robinson,* 455 U.S. 562, 575, 102 S.Ct. 1226, 1234, 71 L.Ed.2d 419 (1982).

ERISA prohibits use of plan assets by or for the benefit of sponsoring parties in interest. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). This prohibition would clearly forbid Lockheed from writing checks drawn on pension funds to buy the releases in question. Similarly, those provisions prohibit plan documents from providing for use of plan funds to buy the releases. In other words, Lockheed cannot avoid the prohibi-

---

**5.** Spink also argues in the alternative, both in his complaint and before this court, that Lockheed's 1990 Plan amendments constituted a breach of Lockheed's fiduciary duty, prohibited by ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), and an unlawful inurement of plan assets barred by ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1). Because we hold that Spink's second cause of action states a viable claim for violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106, we leave for another day the issue of whether an employer acts as a fiduciary when it amends the plan in a way that affects plan assets. We also decline to address Spink's anti-inurement argument.

tions of ERISA by writing an amendment instead of a check. *See Amalgamated Clothing and Textile Workers Union v. Murdock,* 861 F.2d 1406, 1419 (9th Cir.1988) (finding plaintiff stated a viable claim by alleging that through amending and terminating plan, fiduciaries misused plan assets to further interests other than those of plan participants).

Lockheed's second argument is that the releases either were not a net benefit to Lockheed, or that they were merely an incidental benefit. Lockheed urges that the releases do not yield any net benefit to Lockheed because funds paid in exchange for the releases ultimately reduced the amount of surplus that will revert back to Lockheed upon termination of the Plan. Additionally, Lockheed reasons that the releases did not come free to Lockheed because it is ultimately responsible for any Plan shortfall.

Lockheed's astute examination of the economic realities of this situation ignores the central purpose of ERISA. The statute does not require employers to provide employee benefit plans; however, once an employer places assets in trust for the benefit of employees, it can no longer treat those assets as its own. "[T]he crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators...." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 141 n. 8, 105 S.Ct. 3085, 3089 n. 8, 87 L.Ed.2d 96 (1985). Indeed, Lockheed's reasoning proves too much: It would justify an employer spending plan assets freely, without regard to any of ERISA's prohibitions. The logic of Lockheed's argument collapses under its own weight.

The releases at issue cannot be accurately characterized as an incidental benefit. Although no copy of the release appears in the record, the Plan describes the releases as waiving "any claims the Eligible Member may have against [Lockheed] arising from termination of employment or otherwise."

Plan § 15.03(B)(4). The releases purport to be all-encompassing,[6] and assuming *arguendo* that such releases are valid despite their breadth, they relieved Lockheed of countless liabilities or potential liabilities to thousands of employees. This windfall can hardly be considered an incidental benefit. The fact that the amount of Lockheed's liability is not readily quantifiable does not render it incidental.

For these reasons, we conclude that the Lockheed's adoption of the 1990 Plan amendments violated ERISA because the amendments provided for use of Plan assets to purchase a significant benefit for Lockheed. Spink's second cause of action therefore states a viable claim.

## V. Collateral Estoppel

Spink's next contention is that the district court erred when it declined to apply the doctrine of nonmutual offensive collateral estoppel to bar Lockheed from contesting the allegation that it breached its fiduciary duties under ERISA. He argues that Lockheed had a full and fair opportunity to litigate the same issue when it moved to dismiss a nearly identical claim pending before Judge Rafeedie, *see Engineers and Scientists Guild v. Lockheed Corp.,* No. CV 90–6891 ER (GHKx) (C.D.Cal.1990) (unpublished order), and should be bound by the adverse ruling in that case.

Trial courts have broad discretion to determine when to apply offensive collateral estoppel. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979). The district court did not abuse its discretion by declining to do so here.

"Only a final judgment that is 'sufficiently firm' can be issue preclusive." *Robi v. Five Platters, Inc.,* 838 F.2d 318, 326 (9th Cir.1988) (citing *Luben Indus. v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983)).

---

**6.** Spink did not raise, and therefore we do not address, the issue of whether Lockheed's waivers are impermissibly broad in their scope, or whether an employer can condition the receipt of benefits on a release of claims.

To ascertain the "firmness" of a judgment, courts look to various factors, including whether the decision was tentative, whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or was actually reviewed on appeal. *Luben,* 707 F.2d at 1040 (quoting Restatement (Second) of Judgments § 13 cmt. g (1982)). In *Luben,* we affirmed the district court's determination that an interlocutory order issued by another judge in the same district was not "sufficiently firm" because "it could not have been the subject of an appeal." *Id.*

Judge Rafeedie's denial of Lockheed's motion to dismiss in *Engineers and Scientists Guild* was not appealable and the parties subsequently settled the case. Under those circumstances, the district court did not abuse its discretion by refusing to apply issue preclusion to bar Lockheed from contesting Spink's fiduciary breach claim.

## VI. Attorneys' Fees

 Finally, we consider Spink's request for attorneys' fees pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) (1988). This provision grants us discretion to determine whether to award attorneys' fees and costs. 29 U.S.C. § 1132(g)(1). In exercising that discretion, we consider the following criteria:

> "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative legal merits of the parties' positions."

*Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1528–29 (9th Cir.1993) (*as amended* Mar. 22, 1994) (quoting *Oster v. Barco of Cal. Employees' Retirement Plan,* 869 F.2d 1215, 1222 (9th Cir.1988)). We read § 1132(g)(1) "broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under the plan, should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust." *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1468 (9th Cir. 1995) (internal quotations omitted).

Since most of the pertinent factors weigh in favor of Spink, we conclude that attorneys' fees are appropriate. With respect to Lockheed's culpability, as we indicated above, Lockheed's manipulation of plan assets was in direct contravention of the express provisions of ERISA. Spink's claims in Counts I, II, and III of his complaint posited significant legal questions designated as a class action brought on behalf of all similarly situated employees. Lockheed is well able to satisfy a fee award and our award of fees will deter other employers from manipulating plan assets through plan amendments. Although Lockheed prevailed on the collateral and equitable estoppel claims and its arguments on the age discrimination claim were tenable, its arguments regarding the validity of the 1990 Plan amendments were meritless. Spink is entitled to attorneys' fees.

## VII. Conclusion

For the foregoing reasons, the district court's dismissal of Counts I, II, and III of Spink's complaint is REVERSED; the district court's dismissal of Count V and the district court's denial of Spink's motion to collaterally estop Lockheed from contesting the allegation that it breached its fiduciary duty is AFFIRMED; Spink's request for attorneys' fees is GRANTED.

REVERSED in part; AFFIRMED in part.